# EXHIBIT A



### EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is entered into on this 19th day of November, 2016 by and between Monica Murphy ("Employee") and Collective Bias, Inc. ("Employer" or "Company").

In consideration of the mutual promises and covenants contained in this Agreement and for other good and valuable consideration, including, but not limited to, the employment of Employee by Employer, the parties agree as follows:

1. **CONFIDENTIALITY.** Employee recognizes that, in the performance of his/her duties for Employer, Employee will/does have access to the following:

Employer plans, products, prices, costs, discounts, digital files, computer programs, marketing strategies, future plans, business affairs, processes, technical matters, customer/client lists, product designs (current and future), copyrights, financial information and reports, legal files, prices lists, funding sources, lending information, advertising and promotional ideas and strategies, market surveys and/or analysis, other compilations of information, records, and other confidential information (collectively, "Confidential or Proprietary Information") which are valuable, special and unique assets of Employer. Employee acknowledges that Company Confidential or Proprietary Information is owned and shall continue to be owned solely by Employer. Employee agrees that the Employee will not at any time or in any manner, either directly or indirectly:

   a. divulge, disclose, furnish or communicate any Confidential or Proprietary Information to any person, firm, agency, corporation, customer, business, or enterprise without the prior written consent of the Employer and will protect the Proprietary Information and treat it as strictly confidential;

   b. individually, or in conjunction with any other person, firm, agency, company, customer, business, or corporation, employ or cause to be employed any Confidential or Proprietary Information in any manner whatsoever, except in furtherance of the business of Employer;

   c. without the written consent of Employer, publish, deliver, or commit to being published or delivered, any copies, abstracts, or summaries of any files, records, documents, drawings, specifications, lists, and similar items relating to the business of Employer, whether prepared by the Employee or otherwise coming into the Employee's possession, except to the extent required in the ordinary course of Employer's business and as authorized by Employer.

Employee recognizes that the various items of Confidential or Proprietary Information are special and unique assets of the Employer and need to be protected from improper disclosure and unauthorized use to the Employer's detriment. If Employee receives a legal request for Confidential or Proprietary Information, Employee shall immediately deliver all such requests to Employer and shall follow Employer's instructions regarding these requests.

2. **CLIENT INFORMATION.** Employee understands and agrees that, in the performance of Employee's duties for Employer, Employee will have access to, or become familiar with, trade secrets and confidential and proprietary information concerning Employer's clients and prospective clients,

including new product information, sales figures, marketing strategies, marketing plans, financial information and other confidential information concerning the clients' and prospective clients' businesses. Employee agrees that at no time or in any manner will Employee, either directly or indirectly, divulge, disclose, furnish or communicate any such information to any person, firm, agency, corporation, customer, business, or enterprise without the prior written consent of Employer.

Upon termination of this Agreement and Employee's employment, Employee agrees to return to Employer all property of any client or prospective client of Employer (including any copies) that is in the possession of Employee.

3. **RESPONSIBILITY TO REPORT.** Employee further acknowledges and agrees that he/she shall have an affirmative duty to timely report to Employer any actual or reasonably suspected activity that violates Sections 1 and/or 2 of this Agreement by another employee, contractor, vendor, or other individual or entity. This may include intentional or inadvertent actions by the suspected individual/entity. Employee shall also have an affirmative duty to timely report to Employer any actual or reasonably suspected activity that constitutes an unauthorized use, access, disclosure, theft, manipulation, reproduction, and security breach of Employer's and/or its customer's property (including but not limited to its computer and electronic systems), whether or not that property is considered confidential.

4. **EMPLOYER PROPERTY.** All files; keys; records; computer programs; disks and files; documents; drawings; models; specifications; lists, including customer lists; equipment; data; manuals; supplies; promotional materials; plans, and other similar items relating to the business of Employer, including any copies, whether prepared by Employee or otherwise coming into Employee's possession are and shall remain the exclusive property of Employer.

Upon termination of this Agreement and Employee's employment, Employee agrees to return to Employer all property of Employer, that is in the possession of Employee, immediately and in as good condition as when received by Employee (normal wear and tear excepted) including, but not limited to, all files, keys, records, computer programs, disks and files, documents, drawing, lists, including customer lists, equipment, data, manuals, supplies, promotional materials, plans, and other similar items relating to the business of Employer, whether prepared by Employee or otherwise coming into Employee's possession, and any copies of the same, including computer copies.

5. **RESTRICTIVE COVENANTS.** Employee recognizes that Employer has a legitimate business interest in protecting its relationship with customers and potential customers and with its employees.

   a. **NON-COMPETE.** Employee agrees that during the term of employment and for a period of one (1) year, following the termination of Employee's employment, with or without cause, with or without notice, by either party, Employee will not, directly or indirectly, render services to any social media or shopper marketing company or agency in the United States that is a direct competitor to any account to which Employee was principally assigned at any point during the twelve (12) month period preceding his/her separation with the Company.

   b. Employee agrees that during the term of employment and for a period of one (1) year, following the termination of Employee's employment, with or without cause, with or without notice, by either party, Employee will not directly or indirectly solicit any customer or potential customer of Employer with whom Employee had contact or for whose account Employee worked during the last twelve (12) months of Employee's employment with Employer.

   c. Employee agrees that for a period of one (1) year following the termination of Employee's employment, with or without cause, with or without notice, by either party, Employee will not directly or indirectly attempt to encourage, induce, or otherwise solicit, directly or indirectly, any other employee of Employer to breach his or her employment agreement with Employer or to otherwise interfere with the advantageous business relationship of Employer with its employees.

    d. Employee further acknowledges that: (1) in the event his/her employment the Employer terminates for any reason, he/she will be able to earn a livelihood without violating the foregoing restrictions and (2) that his/her ability to earn a livelihood without violating such restrictions is a material condition to his/her employment with Employer.

6. **ENFORCEMENT OF COVENANTS.** Employee agrees that the breach by him/her of this Agreement could not reasonably or adequately be compensated in damages in an action at law, and that Employer shall be entitled to injunctive relief which may include, but shall not be limited to, restraining Employee from rendering any service that would breach this Agreement. However, no remedy conferred by any of the specific provisions of this Agreement (including this paragraph) is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder, or now or hereafter existing in law or in equity, or by state or otherwise. The election of any one or more remedies by Employer shall not constitute a waiver of the right to pursue other available remedies. In the event that it is necessary for such injunctive relief, and Company is successful, the duration of the restrictive covenant shall be computed from the date such relief is granted, reduced by the time period between termination of Employee's employment, by either party, with or without cause, with or without notice, and the date of the first violation of the covenant by Employee.

7. **WORK FOR HIRE.** The Employee acknowledges and agrees that all designs, works of authorship, data, software, notes, records, drawings, memoranda, and/or other documents that are made, revised or compiled by the Employee during the course of the Employee's service to Employer shall be deemed "Work Product" and shall be the property of Employer. All Work Product, including patent, copyright, trade secret and other intellectual property rights related thereto, will be Employer's sole and exclusive property. The parties intend that all Work Product shall be considered to be work-for-hire to the extent it qualifies as such under applicable law. To the extent that any Work Product is not, automatically upon creation thereof, owned by Employer as a work-for-hire or otherwise, the Employee hereby assigns and agrees to assign to Employer all of the Employee's right, title and interest in, to and under all Work Product. During and after the term of this Agreement, the Employee will execute documents and give testimony and take further acts reasonably requested by Employer in connection with any efforts of Employer to obtain and perfect patent, copyright, trade secret and other legal protection for the Work Product. Upon the Employee's termination of service with the Employer, the Employee will deliver such items to Employer and forever relinquish any proprietary rights to them.

8. **TERM/TERMINATION.** Employee understands and agrees that his/her employment with Employer is at-will and may be terminated at any time with or without cause, with or without notice. Nothing contained in this Agreement nor any subsequent modification or variation hereto shall confer upon Employee any right to continue in his/her employment with Employer or shall interfere with or restrain in any way the right hereby expressly reserved by Employer to terminate Employee's employment at any time, with or without cause, with or without notice. Similarly, Employee may terminate the employment relationship with or without cause, with or without notice, at any time.

9. **SURVIVAL.** This Agreement shall survive the termination of the employment relationship by either party.

10. **NOTICES.** All notices required or permitted under this Agreement shall be in writing and shall be deemed delivered when delivered in person or deposited in the United States mail, postage paid, addressed to the Company's or the Employee's last known address. Such addresses may be changed from time to time by either providing written notice in the manner set forth above.

11. **ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties concerning the subject matter hereof and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties concerning the subject matter hereof.

12. **AMENDMENT.** This Agreement may be modified or amended, if the amendment is made in writing and is signed by both parties.

13. **SEVERABILITY.** If any provisions of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid or enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

14. **ATTORNEYS' FEES.** If any party to this Agreement breaches any of the terms of this Agreement, then that party shall pay to the non-breaching party all of the non-breaching party's costs and expenses, including attorneys' fees, incurred by the non-breaching party in enforcing the terms of this Agreement.

15. **WAIVER OF RIGHTS.** If, on one or more occasions, either party fails to insist that the other party perform any of the terms of this Agreement, such failure shall not be construed as a waiver by such party of any past, present, or future right granted under this Agreement; the obligations of both parties under this Agreement shall continue in full force and effect.

16. **APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of Michigan.

EMPLOYEE:  
Date: 11/19/15

EMPLOYER: COLLECTIVE BIAS, INC.  
Name: [signature]  
Date: 11/19/15