# EXHIBIT B

# Confidentiality and Proprietary Rights Assignment Agreement

This document and its attachment (collectively, the "*CAPRAA*") contain certain terms of agreement between Inmar, Inc., a corporation organized under the laws of North Carolina, with offices located at 635 Vine Street, Winston-Salem, NC 27101, or its subsidiary companies, whether now in existence or hereinafter formed or acquired (collectively the "*Company*") and the individual identified on the signature page below (referenced throughout as "*you*" or "*your*," as applicable). The Company and you may each be referenced as a "*party*" throughout this CAPRAA. This CAPRAA is effective as of the date when it has been signed by both parties.

**Background Information.** Each of the parties desire to enter into a legally binding contract consisting of the provisions set forth below, in which you agree to abide by certain rules regarding confidentiality of information, certain arrangements regarding Intellectual Property Rights (as defined below), certain non-compete and non-disclosure covenants, and certain other rules governing the parties' relationship, in consideration for your employment or engagement, or continued employment or engagement, as applicable, by the Company, and for the compensation paid to you now and in the future. YOU ARE ADVISED TO CONSULT WITH LEGAL COUNSEL REGARDING YOUR RIGHTS UNDER THIS CAPRAA BEFORE SIGNING IT. BY SIGNING THIS CAPRAA, YOU ARE REPRESENTING TO THE COMPANY THAT YOU HAVE READ THIS CAPRAA AND UNDERSTAND IT, AND THAT YOU HAVE HAD OPPORTUNITY TO SEEK ADVICE OF COUNSEL. Accordingly, the parties hereby agree as follows:

## Contractual Terms

**1. Capitalized Words and Phrases.** Throughout this CAPRAA, the terms "Intellectual Property Rights", "Confidential Information" and "Proprietary Work Product" have the following meanings: "*Intellectual Property Rights*" are the exclusive rights held by the owner of a copyright, patent, trademark, or trade secret, including (i) the rights to copy, publicly perform, publicly display, distribute, adapt, translate, modify and create derivative works of copyrighted subject matter; (ii) the rights to exclude others from using, making, having made, selling, offering to sell, and importing patented subject matter and to practice patented methods, (iii) the rights to use and display any marks in association with businesses, products or services as an indication of ownership, origin, affiliation, or sponsorship; and (iv) the rights to apply for any of the foregoing rights, and all rights in those applications. Intellectual Property Rights also include any and all rights associated with particular information that are granted by law and that give the owner, independent of contract, exclusive authority to control use or disclosure of the information, including privacy rights and any rights in databases recognized by applicable law. For sake of clarity, Intellectual Property Rights include all rights in Confidential Information. "*Confidential Information*" means any and all confidential and/or proprietary knowledge, data or information in any form of the Company or its related companies, affiliates, parent companies, sister companies, or subsidiaries (collectively "*Affiliates*") or any third party. By way of illustration but not limitation, Confidential Information includes (a) information regarding financial condition and financial projections, (b) trade secrets, secret methods, manufacturing processes, inventions, ideas, processes, formulas, source and object codes, source code of proprietary software, the content of unpublished patent applications, data, research data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques; and (c) information regarding plans for research, development, new or existing products, product and device prototypes, technical designs and specifications, results of product testing, marketing and selling, market intelligence, customer and prospective customer lists and preferences, vendor information, internal cost and pricing data, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and (d) information regarding the skills and compensation of employees of the Company or a third party, the terms of contracts with employees of the Company or third parties, and confidential information which a party receives from its customers or other third parties. "*Proprietary Work Product*" means, collectively, (i) all copyrighted and copyrightable subject matter, including documents, designs, artistic works, software source code and scripts; (ii) all Confidential Information, including databases, know-how, and all information protectable as trade secrets; (iii) all trademarks, service marks, logos, and other indicia of origin protectable under trademark law or similar law; (iv) all inventions of any kind, whether or not patentable, including machines, processes, business methods, formulae, algorithms, compositions of matter, or any other subject matter constituting a development, and (v) all improvements, adaptations, modifications and derivative works of any of the foregoing, to the extent, in any of the cases described by the preceding clauses '(i)', '(ii)', '(iii)', '(iv)' or '(v)', that the same is or has been developed or created, in whole or in part, by you, or to which you contribute or have contributed at any time, either (A) in the course of performing your duties for the Company, or (B) using the Company's resources, facilities, or personnel, during working hours for which you are compensated, or within the scope of your employment or engagement with the Company, as the case may be.

**2. Confidential Treatment of Confidential Information.**

**2.1 Disclosure and Usage Restrictions.** Unless required by law, you agree not to disclose or permit access to the Company's Confidential Information except (i) to the Company's employees and agents in the good faith performance of your duties for the Company; and (ii) to third parties when authorized by the Company. You will not use the Company's Confidential Information for any purpose other than performing services for and on behalf of the Company within the proper scope of your job duties. Your obligations under this Section 2.1 shall survive the termination of your employment or engagement for any reason indefinitely.

**2.2 Former Employer Information.** During your employment by the Company, you will not improperly use or disclose any Confidential Information or trade secrets, if any, of any former employer or any other person to whom you have an obligation of confidentiality, and you will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom you have an obligation of confidentiality unless consented to in writing by that former employer or person and approved in writing by the Company's General Counsel. You will use in the performance of your duties only information which is generally known and used by persons with training and experience comparable to yours, which is common knowledge in the industry or otherwise legally in the public domain, or which is otherwise provided or developed by the Company.

**2.3 Publications.** You agree not to publish or submit for publication any materials containing the Company's Confidential Information, nor make public statements, lectures or speeches containing the Company's Confidential Information, unless you have received prior written consent from the Company. You acknowledge and understand that publication of the Company's Confidential Information, regardless of whether for commercial, non-commercial, academic or other purposes, (i) may limit the Company's or its Affiliates' legal rights to seek patent protection for inventions disclosed within the published materials, (ii) may eliminate or diminish the Company's or its Affiliates' legal rights to claim that certain of the Company's Confidential Information is protectable as a trade secret, or (iii) may cause other harm to the Company or its Affiliates, including, by way of example, by eliminating or diminishing the Company's or its Affiliates' competitive advantage.

**3. Confidential Treatment of Third-Party Information.**
(a) You understand and acknowledge that the Company has received and in the future will receive from third parties Confidential Information of such third party subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During the term of your employment with the Company and thereafter, you will hold such third party information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company). In the course of performing your duties for the Company, you agree not to use the Confidential Information of any third party, including any prior employer, unless your use is permitted by that third party and by the Company. Upon the Company's request, you agree to provide to the Company a copy of any written license agreement or other materials authorizing such use.
(b) You may not use any third party's Confidential Information in any manner that infringes or misappropriates that third party's Intellectual Property Rights. For example, in the course of performing your duties or any other work for the Company, you shall not (i) improperly disclose or provide any third party's Confidential Information to the Company; (ii) improperly use or misappropriate any third party's Confidential Information, including trade secrets; (iii) improperly use any copyrighted work or infringe the copyrights of any third party, nor include copyrighted materials within work product developed for the Company without proper authorization from the copyright holder. In performance of your duties for the Company, you agree to utilize only information which is expressly authorized as described above, or which (i) was independently developed by the Company or for the Company, without violating any third party's proprietary or contractual rights, (ii) is generally known to persons of comparable skill and training; or (iii) is in the public domain.
(c) You represent that, prior to your execution of this CAPRAA, you have not done anything that would be prohibited by this Section 3 after you have executed this CAPRAA. Specifically, you represent that you have not improperly used the Confidential Information of any third party, including any prior employer, in performance of duties for the Company, nor have you disclosed or otherwise provided any of the Company's Confidential Information.
(d) You acknowledge that, if you violate the provisions of this Section 3 at any time, you will be acting without the authorization of the Company and outside the scope of your proper duties for the Company.

**4. Acknowledgments and Proprietary Rights Assignment.**
**4.1 Records; Disclosure of Work Product to Company.** You agree to create and maintain reasonable records of all Proprietary Work Product created by you during your employment or engagement by the Company. You will provide copies of all such records to the Company upon request, and in any event at such regular intervals as the Company may direct. You agree to disclose to the Company each and every Proprietary Work Product promptly after you have created or developed it, according to any disclosure procedures that the Company may specify from time to time. You will treat all non-public records and other non-public information regarding Proprietary Work Product as the Company's Confidential Information. If your employment or engagement by the Company ends for any reason, you agree to deliver a copy of all such records to the Company, to the extent the same have not previously been provided to the Company.

**4.2 Tangible Materials.** You acknowledge that, unless otherwise specifically agreed in writing on a case-by-case basis, the Company retains ownership of all tangible materials that it provides to you, as well as all tangible embodiments and copies of Proprietary Work Product and the Company's Confidential Information. You further agree that the Company will own all tangible embodiments and copies of Proprietary Work Product and the Company's Confidential Information created by you in the performance of your duties for the Company. To the extent you might otherwise hold any proprietary rights or interests in those tangible embodiments and/or copies, you agree to assign all those rights and interests to the Company, without additional compensation, and, to the extent possible under applicable law, you hereby irrevocably assign to the Company all of your rights and interests in those tangible embodiments and copies. Upon the Company's request at any time, you agree to deliver to the Company all tangible embodiments and copies of Proprietary Work Product and/or the Company's Confidential Information in your possession.

**4.3 General Assignment of Proprietary Rights.**
(a) Except at stated in Section 4.4, below, you agree to assign to the Company, without additional compensation, any and all rights or interests that you have or may have at any time, now or in the future, in any Proprietary Work Products, including all Intellectual Property Rights embodied in or practiced by such Proprietary Work Products. To the extent possible under applicable law, you hereby irrevocably assign to the Company all such rights and interests.
(b) Without in any way limiting the breadth of the preceding clause '(a)', you agree that all Proprietary works of authorship that you create within the scope of your employment or engagement by the Company shall be considered works-made-for-hire for purposes of applicable copyright law, and, accordingly, the Company shall be deemed the author of such works of authorship. To the extent any such works of authorship may not be deemed works-made-for-hire, you agree that the same nevertheless remain subject to the preceding clause '(a)' and you agree to irrevocably waive any moral rights you may have in such works of authorship.
(c) You agree that all rights to register or apply for Intellectual Property Rights related to any Proprietary Work Product shall belong exclusively to the Company. Accordingly, without limiting in any way the breadth of the preceding clause '(a)', you agree to assign to Company all rights to apply for patents covering any invention created by you and all rights under patent law that you may have as an inventor of any Proprietary Work Product.
(d) You acknowledge that you retain no rights or license in any Proprietary Work Product or any subject matter assigned to the

Company as contemplated in this CAPRAA. This CAPRAA grants to you no license under any Intellectual Property Rights, and you understand that you will have no right to use any Proprietary Work Product except in performance of your duties for the Company.

(e) You acknowledge and agree that the Company shall have the exclusive right to determine how and when to enforce any Intellectual Property Rights related to the Company's Confidential Information or Proprietary Work Product, such as, by way of example, bringing lawsuits against third party infringers of the Company's patent rights. During and after the period of your employment or engagement by the Company, you agree to provide all reasonable assistance that the Company may request from time to time to enforce its Intellectual Property Rights, including by way of example, by providing testimony, affidavits, responses to written interrogatories, or otherwise participating in such enforcement actions. During the period of your employment or engagement by the Company, you agree that your obligations under this paragraph fall within the scope of your duties for the Company, and you shall not be entitled to additional compensation of any kind. Following the period of your employment or engagement by the Company, you agree to continue performing your obligations under this paragraph, provided that the Company will reimburse your reasonable out-of-pocket expenses to comply with these obligations.

(f) During and after the period of your employment or engagement by the Company, you agree to provide, without additional compensation, all information and assistance as the Company reasonably requests from time to time and as the Company deems necessary or desirable to obtain registrations of, apply for, give evidence of, or to perfect or give effect to the Company's Intellectual Property Rights, and all assignments and licenses of Intellectual Property Rights given to the Company by you under this CAPRAA, in any jurisdiction worldwide. For example, you agree to execute additional documents confirming your assignment of Intellectual Property Rights that are embodied in or practiced by Proprietary Work Product, or documents that are necessary to apply for patent protection in foreign jurisdictions. If, after reasonable efforts, the Company is unable to procure your assistance as described in this paragraph (*e.g.*, due to your disability or due to lack of information regarding your current address), you agree that the Company shall have the right to act on your behalf as your limited agent to carry out your obligations under this paragraph, including, by way of example, to execute documents in your name for such purposes. You hereby irrevocably appoint the Company as your agent and attorney-in-fact and grant a continuing power of attorney to the Company for such limited purposes, which appointment and power of attorney is coupled with an interest.

**4.4 Prior Works and Inventions; Retained Rights**

(a) Notwithstanding any other provision of this CAPRAA, you understand that this CAPRAA is not intended to require or cause you to assign any Intellectual Property Rights that you have or may have in the specific, previously existing works of authorship, inventions (whether or not patentable), or other previously existing subject matter, if any, identified and reasonably described in Exhibit A. Collectively, this CAPRAA references those items as "*Prior Works and Inventions*." You represent that Exhibit A contains a complete and accurate list and description of the Prior Works and Inventions, if any, in which you claim to own Intellectual Property Rights or other proprietary rights or interests. You further represent that, to the best of your knowledge, you are legally entitled to claim ownership of such Intellectual Property Rights or other proprietary rights or interests. If you are subject to any legal constraint, such as a duty of confidentiality, which prevents you from listing or reasonably describing any particular Prior Works and Inventions, you agree to include within Exhibit A a notation of the existence of each such Prior Work and Invention subject to a constraint against disclosure, together with a description of the general nature thereof and, if legally permitted, the identity of the person(s) or entity(ies) to whom such duty of confidentiality is owed. If no Prior Works and Inventions are listed in Exhibit A, you represent that no Prior Works and Inventions exist.

(b) Notwithstanding any other provision of this CAPRAA, you understand that this CAPRAA is not intended to require or cause you to assign any Intellectual Property Rights that you have or may have in works of authorship, inventions (whether or not patentable), or other subject matter that you develop or create and that does not relate to the Company's business, is not derived from the Company's Confidential Information or Proprietary Work Products, is not developed or created using the Company's resources, facilities or personnel, is not developed or created during working hours for which you are compensated, and is not otherwise created or developed in the course of performing your duties for Company or within the scope of your employment or engagement with the Company. Collectively, this CAPRAA references those items as "*Independent Works and Inventions.*"

(c) Notwithstanding any other provision of this CAPRAA, you understand that this CAPRAA is not intended to require or cause you to assign any Intellectual Property Rights that you have or may have and that cannot be assigned under applicable law. Collectively, this CAPRAA references those items as "*Non-Assignable Works and Inventions.*"

(d) Collectively, the term "*Retained Works and Inventions*" shall mean all Prior Works and Inventions, all Independent Works and Inventions, and all Non-Assignable Works and Inventions. Unless you receive the written approval of an authorized representative of the Company in each instance, you agree not to incorporate any Retained Works and Inventions into any work product you develop or provide to the Company or that you provide on Company's behalf to any third party. In the event that you do incorporate any Retained Works and Inventions within any work product that you develop or provide to the Company or that you provide on the Company's behalf to any third party, you agree to provide full disclosure to the Company in advance and you hereby grant to the Company a worldwide perpetual, irrevocable, fully paid, royalty free, non-exclusive license, under all Intellectual Property Rights therein, to use, reproduce, publicly perform, publicly display, adapt, translate, modify, create derivative works, digitally transmit, and distribute the same, and, as applicable, to make, sell, offer to sell and import the same, which license shall be fully sublicenseable through multiple tiers of sublicensees. You further release, discharge, waive any and all claims regarding, and covenant not to sue the Company, its Affiliates and their respective assignees and customers in connection with, the use and distribution of any Retained Works and Inventions and the exercise of any Intellectual Property Rights or other proprietary rights or interests therein.

**5. Certain Terms of Your Relationship to the Company**

**5.1. General Duty of Loyalty.** You acknowledge and agree that throughout the period of your employment or engagement by the Company, you remain subject to a general duty of loyalty to the Company, and you may not, without the prior, express, written

authorization of an officer the Company, engage in any activities that (i) create any conflict of interest in performing your duties for the Company; (ii) contractually or otherwise legally constrain you from fully performing your duties for the Company or that interfere with such performance; (iii) usurp or divert, for your own account or for a third party, any business opportunity or potential business opportunity of the Company; (iv) interfere with the Company's existing business relationships, or (v) compete against the Company's then-existing business or business plans.

**5.2 Continuing Obligations.** You acknowledge and agree that your obligations under this CAPRAA are ongoing obligations that continue in effect indefinitely, or for the relevant period specified. For avoidance of doubt, even after your employment or engagement by the Company ends for any reason, (i) the limitations on your use and disclosure of the Company's Confidential Information, as described in Section 2, shall continue in effect indefinitely; and (ii) your duties to provide records, to make assignments of Intellectual Property Rights, to provide information and assistance, and to grant licenses, all as contemplated in Section 4, shall continue in effect indefinitely. You agree that the Company shall have the right to notify third parties, including your future employers, of your obligations under this CAPRAA, and you consent to our contact with any such third parties for such purposes.

**6. No Change to Employment Status.** You understand this CAPRAA is not intended to alter, and may not be interpreted to cause any change to, the nature of your employment as an at-will employee, if applicable.

**7. Covenant Not To Compete.**
You covenant that during the "Noncompetition Period" and within the "Noncompetition Area," as defined below, you shall not engage in the "Business," as defined in Section 11 below in the same or substantially similar capacity in which you engaged in the Business on behalf of the Company. Specifically, but without limiting the foregoing, you agree that during such period and within such area, you shall not do any of the following: (a) be an owner of any capital stock, other equity securities or ownership interests of any Business Entity (as defined herein) that conducts a business of a like or similar nature to the Business; provided, however, that you may own up to five percent (5%) of the stock of a corporation traded on a national securities market in the United States of America or Canada; or (b) in the same or substantially similar capacity in which you engaged in the Business on behalf of the Company, be an employee, officer, director, principal, agent, consultant, lender to, independent contractor or trustee of any Business Entity or other person that conducts a business of a like or similar nature to the Business. For purposes of this CAPRAA, "**Business Entity**" means any corporation, sole proprietorship, general or limited partnership, limited liability company, joint venture, trust, unincorporated association or any other business entity.

**8. Non-Solicitation Covenant.**
You covenant that during the Noncompetition Period you shall not:
(a) for yourself, or on behalf of any other person or Business Entity solicit, divert or take away, or attempt to solicit, divert, or take away any of the customers, or prospective customers of the Company with whom you had contact during the twelve (12) months prior to the termination of your employment relationship with the Company; or

(b) induce (or assist any other person to induce) any person to leave the employ of the Company.

**9. Non-Competition Period.**
"**Noncompetition Period**" means the period of your employment with the Company (the "**Employment Term**") and for a period of two (2) years after termination of the employment relationship between the parties for any reason (such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants set forth herein). In the event that the two year time period shall be determined by judicial action to be too long a noncompetition period to be enforceable, the Noncompetition Period shall mean the Employment Term and for a period of twelve (12) months after its termination.

**10. Non-Competition Area.**
10.1 You acknowledge and agrees that the Company does business on a nationwide basis in the United States of America and Canada, and that breach of your covenants contained herein would immeasurably and irreparably damage the Company, regardless of the area in which the competing business is located in which the activities constituting such breach were to occur. Accordingly, the Noncompetition Area shall consist of the entire United States of America and Canada.

10.2 In the event the preceding subsection shall be determined by judicial action to define too broad a territory to be enforceable, the Noncompetition Area shall consist of each and every state in the United States of America and province and territory in Canada in which the subsidiary or business unit employing you at the time of your termination provided services to its customers, or in which its customers received those services, in the twelve (12) months prior to your termination.

10.3 In the event the preceding subsections shall be determined by judicial action to define too broad a territory to be enforceable, the Noncompetition Area shall be each and every state in the United States of America and province and territory in Canada in which you worked or provided services to customers, or in which those customers received those services, in the twelve (12) months prior to your termination.

10.4 In the event the preceding subsections shall be determined by judicial action to define too broad a territory to be enforceable, the Noncompetition Area shall be within ten (10) miles of any location from which the subsidiary or business unit employing you at the time of your termination provided services to its customers, or at which those customers received those services, in the twelve (12) months prior to your termination.

10.5 In the event the preceding subsections shall be determined by judicial action to define too broad a territory to be enforceable, the Non-Competition Area shall be within ten (10) miles of any location from which you worked or provided services to customers, or at which those customers received those services, in the twelve (12) months prior to your termination.

10.6 In the event that the preceding subsections shall be determined by judicial action to define too broad a territory to be enforceable, the Noncompetition Area shall be the entire States of Georgia, North Carolina, Texas and the Province of Ontario.

Engaging in the Business in the same or substantially similar capacity in which you were engaged in the Business on behalf of the Company by providing competitive services, either in person or remotely (including but not limited to telephonic, electronic, or postal communications), within the Noncompetition Area, shall be deemed to be a violation of Section 7 of this CAPRAA even though the physical location of your employment site is outside the Noncompetition Area.

*Confidentiality and Proprietary Rights Assignment Agreement*

## 11. Business

11.1 The "Business" shall be any business or service engaged in, as well as any new products or service offerings for which there is substantial development or market launch plans, by the Company or any of its Affiliates for which you have provided services during the term of your employment.

11.2 In the event that the preceding subparagraph shall be determined by judicial action to define too broad a business to be enforceable, the Business shall be any business or service engaged in by the Company or any of its Affiliates for which you have provided services within the one year immediately preceding the date of your termination.

11.3 In the event that the preceding subparagraph shall be determined by judicial action to define too broad a business to be enforceable, the Business shall be any business or service engaged in by the Company or any of its Affiliates which employed you immediately prior to your termination.

## 12. Representations.

You represent to the Company (i) that you have read and understood all of the provisions set forth in this CAPRAA; (ii) that you have had adequate opportunity to seek advice of legal counsel regarding this CAPRAA and the terms herein; (iii) that you have the right to enter into and perform your obligations under this CAPRAA; and (iv) that you are not under any legal constraint or other obligation that would conflict with your full and timely performance of your obligations under this CAPRAA.

## 13. Independent Covenant.

Each of the covenants on your part contained in this CAPRAA shall be construed as an agreement independent of each other such covenant. The existence of any claim or cause of action by you against the Company, whether predicated on this CAPRAA or otherwise, shall not constitute a defense to the enforcement by the Company of any such covenant.

## 14 Reasonableness

You acknowledge and understand that your full and timely performance of your obligations under this CAPRAA is important to the Company, and that the Company's Confidential Information and Proprietary Work Product have substantial and unique value. You acknowledge that the covenants contained in this CAPRAA are reasonably necessary for the protection of the Company and its business, and that such covenants are reasonably limited with respect to the activities prohibited, the duration thereof, the geographic area thereof, the scope thereof and the effect thereof on you and the general public. You further acknowledge and represent to the Company that the observance of the terms of this CAPRAA will not deprive you of the ability to earn a livelihood. YOU FURTHER ACKNOWLEDGE THAT VIOLATION OF THE COVENANTS CONTAINED HEREIN WOULD IMMEASURABLY AND IRREPARABLY DAMAGE THE COMPANY, AND BY REASON THEREOF YOU AGREE THAT FOR VIOLATION OR THREATENED VIOLATION OF ANY OF THE PROVISIONS OF THIS CAPRAA, THE COMPANY SHALL, IN ADDITION TO ANY OTHER RIGHTS AND REMEDIES AVAILABLE TO IT, AT LAW OR OTHERWISE, BE ENTITLED TO AN INJUNCTION, WITHOUT PAYMENT OF A BOND, TO BE ISSUED BY ANY COURT OF COMPETENT JURISDICTION ENJOINING AND RESTRAINING YOU FROM COMMITTING ANY VIOLATION OR THREATENED VIOLATION OF THIS CAPRAA. YOU CONSENT TO THE ISSUANCE OF SUCH INJUNCTION.

## 15. Consideration.

You acknowledge that your execution and performance of this CAPRAA is given in consideration for your employment or engagement by the Company, and that the same constitutes your receipt of adequate consideration, and you agree not to contest any obligation under this CAPRAA on the basis that you have not received compensation for the same.

## 16. Notices.

All notices, requests, demands, or other communications shall be in writing and shall be deemed to have been duly given if delivered by hand or by facsimile transmission or if mailed by reputable overnight courier service, postage prepaid, to the parties at the following addresses:

If to The Company:
Inmar, Inc.
635 Vine Street
Winston Salem, NC 27101
Attn: General Counsel

If to The Employee:
_____
_____
_____
_____

or to such other address as to which notice is given as described above.

## 17. Modification.

The parties acknowledge that they may desire to modify this CAPRAA in the future, but that no modifications will be legally binding unless the modifications are written on paper and physically signed by representatives of each of them. The parties agree that this CAPRAA cannot be modified by electronic writings, such as email, nor by affixing digital signatures of any nature to any digital file. The parties expressly waive their right to modify this provision orally.

## 18. Governing Law.

The parties intend that the laws of the State of North Carolina should be used to interpret and enforce this CAPRAA, including with respect to any disputes arising out of or in connection with this CAPRAA, and the parties agree that the laws of North Carolina, without reference to its choice of law rules, should govern any statutory or employment-related claims between them. If any instances occur when the laws of North Carolina themselves would require the law of another jurisdiction to be applied to this CAPRAA, the parties do not wish the other jurisdiction's law to be applied and instead intend for North Carolina's law to be applied even in those situations. The parties hereby agree and acknowledge that this CAPRAA is made and performed in the State of North Carolina and that such choice of governing law is *bona fide* and reasonable in the circumstance.

## 19. Governing Forum and Jurisdiction.

THE PARTIES HEREBY SUBMIT TO THE JURISDICTION OF THE COURTS (STATE AND FEDERAL) LOCATED WITHIN FORSYTH COUNTY, NORTH CAROLINA AS REGARDS ALL MATTERS ARISING OUT OF, OR IN CONNECTION WITH, THIS CAPRAA; PROVIDED, HOWEVER, THAT SUCH SUBMISSION SHALL NOT PREVENT THE COMPANY FROM TAKING ANY PRELIMINARY MEASURES OR PURSUING ANY PRELIMINARY REMEDIES, AVAILABLE UNDER THE LAWS OF ANY COMPETENT JURISDICTION INCLUDING, WITHOUT LIMITATION, THE COURTS OF CANADA (AND THE PROVINCES AND TERRITORIES THEREIN) AND MEXICO. YOU HEREBY SUBMIT TO

HE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS OF FORSYTH COUNTY, NORTH CAROLINA, AND YOU AGREE THAT THE COMPANY MAY, AT ITS OPTION, ENFORCE ITS RIGHTS HEREUNDER IN ANY COURT LOCATED WITHIN NORTH CAROLINA.

20. Rules for Interpreting this CAPRAA.

20.1 Inclusive Interpretations. The parties agree that the following rules should be applied when interpreting the words of this CAPRAA, unless the express words of the CAPRAA indicate otherwise: (i) all references to one gender apply equally to both genders; (ii) definitions of nouns in the singular also apply to the plural, and vice versa; and (iii) any use of the term "including," if followed by a list, will be interpreted to mean "including, without limitation."

20.2 Participation in Drafting. The parties intend that this CAPRAA should be interpreted in all instances as if they participated equally in the drafting of all its provisions, and that no provision in this CAPRAA should be interpreted in a manner unfavorable to a party on the basis that it drafted the provision.

20.3 Enforceability. The invalidity or nonenforceability of any provision of this CAPRAA shall not affect the validity or enforceability of any other provision and this CAPRAA shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. Even if the law will not enforce a provision of this CAPRAA in a particular instance, the parties intend to remain bound by the other, enforceable provisions. If the unenforceable provision could be interpreted in a manner that would render it enforceable, while still reflecting the parties' mutual intent, they intend for that interpretation to apply. If permitted by law, the parties also intend for the provision that cannot be enforced in that instance to remain applicable in any other instances when it can be enforced. Further, in the event that any provision contained in this CAPRAA shall be declared by a court of competent jurisdiction to be overbroad as written, the parties specifically agree that the court should modify such provision in order to make it enforceable, and that court should view each such provision as severable and enforce those severable provisions deemed reasonable by such court.

20.4 Waivers. The Company's failure to insist upon strict compliance with any provision of this CAPRAA shall not be deemed a waiver of such provision or any other provision. Even if the Company fails to enforce its rights under this CAPRAA in a particular instance, you agree that you must still perform your duties in that instance unless an authorized representative of the Company physically signs a paper that expressly waives its rights in that instance, and any such waiver only applies to the particular instance and particular rights expressly waived.

20.5 Execution of Multiple Copies. If the parties sign multiple copies of this CAPRAA, they intend that all of those copies will be considered original copies, but together all of those copies represent only one contract.

21. General Provisions.

21.1 Enforcement. The rights and remedies of the Company under this CAPRAA may be enforced by the Company or any of its Affiliates or any combination of them.

21.2 Time. Time will be of the essence in this CAPRAA.

21.3 Continuing Employment. You agree and understand that nothing in this CAPRAA shall confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with your right or the Company's right to terminate your employment at any time, with or without cause. These matters are governed exclusively by the employment agreement between the Company and you, if any. Any subsequent change or changes in your duties, salary or compensation will not affect the validity or scope of this CAPRAA.

21.4 Entire Agreement. This CAPRAA is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us.

21.5 Limitations on Assignment and Delegation. You may not assign or delegate this CAPRAA in whole or in part, and any attempted assignment or delegation will be null and void. You acknowledge and agree that the Company may freely assign this CAPRAA, in whole or in part, to any third party.

By signing below, each party signifies its intent to be legally bound by the provisions of this CAPRAA.

"YOU" (EMPLOYEE/CONTRACTOR)

Signature: _Monica Murphy Vargas_

Name: _MONICA MURPHY VARGAS_ (Print)

Date: _12.23.16_

INMAR, INC.

By: _[signature]_ (Signature)

Name: _JAMIE HIGGINS_ (Print)

Title: _Sr. GTI Business Partner_

Date: _12/27/16_

## Confidentiality and Proprietary Rights Assignment Agreement

### Exhibit A
### Prior Works and Inventions

As described in Section 4.4 of the CAPRAA to which this Exhibit A is attached, the following sets forth a complete and accurate list and description of all Prior Works and Inventions, as defined in the CAPRAA*:

_____
_____
_____
_____

* If you are subject to any legal constraint, such as a duty of confidentiality, which prevents you from listing or reasonably describing any particular Prior Works and Inventions, the following identifies the existence of each such Prior Work and Invention subject to a constraint against disclosure, together with a description of the general nature thereof and, if legally permitted, the identity of the person(s) or entity(ies) to whom such duty of confidentiality is owed:

_____
_____
_____
_____