# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INMAR, INC. and COLLECTIVE BIAS, INC., | |
| Plaintiffs, | Case No: 18-cv-2306 |
| v. | Judge Charles R. Norgle |
| MONICA MURPHY VARGAS and MLW SQUARED, INC., d/b/a AHALOGY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MONICA MURPHY VARGAS' AND
MLW SQUARED, INC.'S MOTION TO DISMISS COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

FACTUAL ALLEGATIONS ................................................................................................. 2

    Collective Bias's Industry.................................................................................................. 2

    Monica's Tenure with Collective Bias ............................................................................. 2

    Inmar's Acquisition of Collective Bias............................................................................. 3

    Monica's Departure from Collective Bias ........................................................................ 3

    Plaintiffs' Claims .............................................................................................................. 4

LEGAL STANDARD............................................................................................................. 4

ARGUMENT .......................................................................................................................... 5

I.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED
    BECAUSE THE RESTRICTIVE COVENANTS THAT MONICA SIGNED ARE
    UNENFORCEABLE AS A MATTER OF LAW. .................................................................. 5

    A.  The Collective Bias Agreement Is Unenforceable as a Matter of Law. ........................... 5

        1.  The Collective Bias Agreement Was Superseded by the CAPRAA And Is
            Therefore Unenforceable. ........................................................................................ 5

        2.  Even if the Collective Bias Agreement Was Not Superseded, Its Non-
            Competition Clause Is Facially Unreasonable in Its Terms........................................ 6

    B.  The Restrictive Covenants in the CAPRAA Are Unenforceable. ..................................... 7

        1.  The CAPRAA's Restrictive Covenants Are Unenforceable Because They
            Were Not Made as Part of an Employment Agreement. ............................................. 7

        2.  Alternatively, the CAPRAA's Restrictive Covenants Fail for Lack of
            Consideration. ........................................................................................................... 8

        3.  The CAPRAA's Non-Competition Clause Is Facially Unreasonable. ........................ 9

    C.  Plaintiffs Have Not Alleged that Monica Breached Any Non-Solicitation
       Obligations or Caused Any Damages. ............................................................................ 10

    D.  The Confidentiality Agreements in the Collective Bias Agreement and the
       CAPRAA Are Unenforceable........................................................................................ 11

II.  PLAINTIFFS' TRADE SECRET CLAIMS FAIL AS A MATTER OF LAW. .................... 11

    A.  Plaintiffs Have Not Alleged a Valid Trade Secret Under Either the ITSA or the
       DTSA. ............................................................................................................................ 11

        1.  Plaintiffs Have Not Sufficiently Alleged a Single Trade Secret................................ 12

        2.  Plaintiffs Have Not Sufficiently Alleged How They Safeguarded Alleged
            Trade Secrets........................................................................................................... 15

    B.  Plaintiffs Have Not Sufficiently Alleged Wrongful Use of Trade Secrets by
       Ahalogy.......................................................................................................................... 15

III. PLAINTIFFS FAIL TO PLEAD A VALID CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT. ................................................................................................. 16

IV. PLAINTIFFS' COMMON LAW CLAIMS ARE ALL PREEMPTED BY THE ITSA AND ALTERNATIVELY, FAIL TO STATE A CLAIM. ...................................................... 18

    A. Plaintiff's Tortious Interference Claim Against Ahalogy Should Be Dismissed Because It Is Preempted and Also Fails to State a Valid Claim. ....................................... 19

    B. Plaintiff's Conversion, Unjust Enrichment, Trespass to Chattel and Civil Conspiracy Claims Are All Preempted by the ITSA. ........................................................ 20

CONCLUSION ........................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs. v. Chiron Corp.*, No. 97 C 0519,
  1997 WL 208369 (N.D. Ill. Apr. 23, 1997) .................................................................. 16

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) .................................................................... 4, 9, 14

*Allied Benefit Sys., Inc. v. Ramirez*,
  188 F. Supp. 3d 704 (N.D. Ill. 2015) .................................................................. 12, 16

*Alpha Sch. Bus Co. v. Wagner*,
  910 N.E.2d 1134 (Ill. App. Ct. 2009) ............................................................. 13, 15, 16

*Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*,
  190 F. Supp. 3d 812 (N.D. Ill. 2016) .................................................................. 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 4

*Avery Dennison Corp. v. Naimo*, No. 06 C 3390,
  2006 WL 3343762 (N.D. Ill. Nov. 16, 2006) ............................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 4

*Brown & Brown, Inc. v. Mudron*,
  887 N.E.2d 437 (Ill. App. Ct. 2008) ................................................................. 7, 9

*Carlson Grp., Inc. v. Davenport*, No. 16 C 10520,
  2016 WL 7212522 (N.D. Ill. Dec. 13, 2016) ............................................................ 11

*Carpenter v. Aspen Search Advisers, LLC*, 10 C 6823,
  2011 WL 1297733 (N.D. Ill. Apr. 5, 2011) ............................................................. 14

*Cassetica Software, Inc. v. Comput. Scis. Corp.*, No. 09 C 0003,
  2009 WL 1703015 (N.D. Ill. June 18, 2009) ............................................................ 18

*Chocolate Indus., Inc. v. Cornerstone Promotion, Inc.*, No. 11 C 4649,
  2012 WL 3598754 (N.D. Ill. Aug. 20, 2012) ............................................................ 20

*Cline v. Dahle*,
  563 S.E.2d 307 (N.C. Ct. App. 2002) .................................................................. 8

*Copypro, Inc. v. Musgrove*,
  754 S.E.2d 188 (N.C. Ct. App. 2014) .................................................................. 8

*Cronimet Holdings, Inc. v. Keywell Metals, LLC*,
  73 F. Supp. 3d 907 (N.D. Ill. 2014) .............................................................. 19, 20

*CustomGuide v. CareerBuilder, LLC*,
  813 F. Supp. 2d 990 (N.D. Ill. 2011) ................................................................. 17

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*,
  616 F. Supp. 2d 805 (N.D. Ill. 2009) ................................................................. 16

*Diedrich Ins. Agency, LLC v. Smith*,
   2011 IL App (5th) 100048 ................................................................................. 9

*Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*,
   661 F.3d 959 (7th Cir. 2011) ........................................................................... 19

*Farr Assocs., Inc. v. Baskin*,
   530 S.E.2d 878 (N.C. Ct. App. 2000) ............................................................ 10

*GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632,
   2015 WL 94235 (N.D. Ill. Jan. 5, 2015) ........................................................ 12

*Henley Paper Co. v. McAllister*,
   117 S.E.2d 431 (N.C. 1960) .............................................................................. 6

*Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*,
   223 F. Supp. 2d 953 (N.D. Ill. 2002) ............................................................ 19

*Instant Tech., LLC v. DeFazio*,
   40 F. Supp. 3d 989 (N.D. Ill. 2014) .............................................................. 16

*Kim v. Dawn Food Prods., Inc.*,
   206 F. App'x 558 (7th Cir. 2006) ................................................................... 11

*Labor Ready, Inc. v. Williams Staffing, LLC*,
   149 F. Supp. 2d 398 (N.D. Ill. 2001) ............................................................ 19

*Liautaud v. Liautaud*,
   221 F.3d 981 (7th Cir. 2000) ......................................................................... 20

*Mapal, Inc. v. Atarsia*,
   147 F. Supp. 3d 670 (E.D. Mich. 2015) ....................................................... 6, 7

*Mastrom, Inc. v. Warren*,
   196 S.E.2d 528 (N.C. Ct. App. 1973) ............................................................. 8

*Medix Staffing Sols., Inc. v. Dumrauf*, No. 17 C 6648,
   2018 WL 1859039 (N.D. Ill. Apr. 17, 2018) .............................................. 7, 10

*Mid-Town Petroleum, Inc. v. Gowen*,
   611 N.E.2d 1221 (Ill. App. Ct. 1993) .............................................................. 9

*New World Sys. Corp. v. Jones*, No. 06–11603,
   2009 WL 996954 (E.D. Mich. Apr. 14, 2002) ................................................ 7

*Packaging v. Hein*, No. 14 C 9670,
   2015 WL 6164957 (N.D. Ill. Oct. 20, 2015) .............................................. 11, 14

*Pampered Chef v. Alexanian*,
   804 F. Supp. 2d 765 (N.D. Ill. 2011) ............................................................ 20

*Phillips v. Avis, Inc.*, No. 95 C 1566,
   1996 WL 288782 (N.D. Ill. May 29, 1996) ................................................... 12

*Pope v. Alberto-Culver Co.*,
   694 N.E.2d 615 (Ill. App. Ct. 1998) .............................................................. 13

*Schultz v. Ill. Farmers Ins.*,
   930 N.E.2d 943 (Ill. 2010)................................................................................ 5

*Segerdahl Corp. v. Ferruzza*, No. 17 C 3015,
   2018 WL 828062 (N.D. Ill. Feb. 10, 2018) ............................................ 12, 14, 20

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816,
   2018 WL 636769 (N.D. Ill. Jan. 31, 2018) .............................................. 12

*Spitz v. Proven Winners N. Am., LLC*,
   759 F.3d 724 (7th Cir. 2014) ............................................................... 19

*Stericycle, Inc. v. Carney*, No. 12 C 9130,
   2013 WL 3671288 (N.D. Ill. July 12, 2013)............................................. 10

*Stunfence, Inc. v. Gallagher Sec. (USA), Inc.*, No. 01 C 9627,
   2002 WL 1838128 (N.D. Ill. Aug. 12, 2002) ........................................... 7

*Sys. Dev. Servs., Inc. v. Haarmann*,
   907 N.E.2d 63 (Ill. App. Ct. 2009) ...................................................... 13

*Tamlyn v. Bluestone Advisors, LLC*, No. 17 C 8893
   2018 WL 1920184 (N.D. Ill. Apr. 24, 2018) ........................................... 18

*Thermal Zone Products Corp. v. Echo Eng., Ltd.*, No. 93 C 556,
   1993 WL 358148 (N.D. Ill. Sept. 4, 1993) ............................................ 14

*Thomas & Betts Corp. v. Panduit Corp.*,
   108 F. Supp. 2d 968 (N.D. Ill. 2000) ................................................... 19

*TriTeq Lock & Sec. LLC v. Innovative Secured Sols., LLC*, No. 10 CV 1304,
   2012 WL 394229 (N.D. Ill. Feb. 1, 2012) ........................................ 16, 17, 18

*Woodard v. Harrison*, No. 08–2167,
   2008 WL 4724370 (C.D. Ill. Oct. 24, 2008)............................................ 15

**Statutes**

18 U.S. C. 1030(a)(5)(C) ............................................................................ 17

18 U.S.C. § 1839(3) ................................................................................. 12

18 U.S.C. 1030 ..................................................................................... 16

18 U.S.C. 1030(a)(2)(C) ............................................................................ 17

18 U.S.C. 1030(b) ................................................................................. 17

18 U.S.C. 1030(c)(4) ............................................................................... 18

765 ILCS 1065/2(d) ................................................................................ 12

765 ILCS 1065/8 ................................................................................... 18

**Rules**

Fed R. Civ. P. 12(b)(6)............................................................................... 4

Defendants Monica Murphy Vargas ("Monica") and MLW Squared, Inc., d/b/a Ahalogy ("Ahalogy") (collectively "Defendants") submit this joint Memorandum in support of their Motion to Dismiss the Complaint. For reasons presented below, Plaintiffs Inmar, Inc. ("Inmar") and Collective Bias, Inc. ("Collective Bias") (collectively "Plaintiffs") have not stated valid claims, and the Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiffs seek to restrain Monica, Collective Bias' former employee, from pursuing her livelihood with Ahalogy solely due to the fact that Ahalogy competes in the marketing industry alongside Collective Bias. Plaintiffs filed their Complaint *seven months* after Monica resigned from Collective Bias and began working at Ahalogy, and tellingly, did not seek preliminary injunctive relief. Even after waiting an unreasonably long time to bring their claims, Plaintiffs still cannot identify exactly how they have been damaged by Defendants. Plaintiffs' claims are nothing more than a late attempt to harass Monica's and Ahalogy's ability to engage in fair competition. Given Illinois' strong public policy in disfavoring restrictive covenants, and Plaintiffs' failure to adequately plead a single claim, the Complaint should be dismissed with prejudice.

Specifically, Plaintiffs' breach of contract claims attempt to enforce two different restrictive covenant agreements against Monica, hoping one "sticks" with this Court. However, the first agreement was superseded by the second agreement's terms, and at any rate, the first and second agreements' restrictive covenants are both unreasonably broad and similarly lack consideration. Notably, Plaintiffs do not allege how Monica caused any damages. Plaintiffs' trade secret claims also fail because none of the information alleged by Plaintiffs is secret, and Plaintiffs do not allege how Ahalogy or Monica used any trade secrets. Likewise, Plaintiffs' Computer Fraud and Abuse Act claim should be dismissed because Plaintiffs have not alleged that Monica

1

caused any damage to their computer systems.  Finally, Plaintiffs' common law claims are all preempted by the Illinois Trade Secrets Act ("ITSA").

While the Complaint is long in length, it is short in actual substance.  When one delves into the heart of Plaintiffs' allegations, it is clear that Plaintiffs' primary gripe is that Monica went to work for a competitor, and all other ostensible transgressions—which happened many months ago—are just an attempt to slow down Plaintiffs' emerging competitor in the marketplace.  The facts, as pled, show that Monica worked hard for Collective Bias and now simply attempts to pursue her trade elsewhere.  For these reasons, the Complaint should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The Complaint alleges the following facts, which Defendants assume are true solely for purposes of this Motion to Dismiss:

### *Collective Bias's Industry*

Collective Bias is a Delaware corporation conducting business in "influencer marketing," which is a form of marketing where a seller leverages popularity and credibility of specific individuals to market a product.  Compl. ¶¶ 13-14, ECF No. 1.  Plaintiffs claim that Collective Bias is a direct competitor of Ahalogy.  *Id.* ¶ 94.

### *Monica's Tenure with Collective Bias*

Plaintiffs allege that on November 19, 2015, Collective Bias hired Monica to serve as its "Senior Director of Business Development."  *Id.* ¶ 29.  Monica signed an employment agreement (the "Collective Bias Agreement") and became an employee of Collective Bias.  *Id.* ¶¶ 30-31.  According to Plaintiffs, Monica had job duties that revolved around sales and client management.  *Id.* ¶ 33.  Monica allegedly used Collective Bias's confidential information during the course of her duties.  *Id.* ¶ 34.  Collective Bias allegedly provided Monica with a keycard to its facilities, a

laptop computer to conduct business, an email account and access to Collective Bias's computer network and all of Collective Bias's "employees, clients and prospective clients." *Id.* ¶ 32.

### *Inmar's Acquisition of Collective Bias*

Plaintiffs allege that on or around December of 2016, Inmar acquired Collective Bias and "continued to operate" Collective Bias "as its own entity." *Id.* ¶ 37. Inmar, however, required Monica and all other Collective Bias employees to sign another document with restrictive covenants, entitled the "Confidential and Proprietary Rights Assignment Agreement" ("CAPRAA"). *Id.* Monica and other employees were required to sign the CAPRAA in exchange for "additional benefits," which Inmar does not specify. *Id.* ¶ 38. Plaintiffs allege that after signing the CAPRAA, Monica had access to Inmar's unspecified "property and its confidential and proprietary information." *Id.* ¶ 39.

### *Monica's Departure from Collective Bias*

On August 24, 2017, after allegedly working with a recruiter, Monica submitted her resignation to Plaintiffs. *Id.* ¶¶ 49, 55. Shortly thereafter, she began working for Ahalogy. *Id.* ¶¶ 56-57. Plaintiffs allege that because Monica is in marketing sales for Ahalogy regarding "brands" and "agencies," her job duties for Ahalogy are "nearly identical" to her previous duties for Collective Bias. *Id.* ¶ 50. Plaintiffs compare Monica's current and previous job descriptions and find overlap concerning things like: expertise on "all things social media;" understanding "product offering, positioning, pricing, and competitor differences;" "effectively prospect[ing] potential clients;" and meeting "annual sales goals." *Id.* ¶ 51.

Monica, before leaving Collective Bias, allegedly forwarded a few emails from her work computer to her personal email account. *Id.* ¶ 54. Plaintiffs allege that these emails consisted of: client identities and contact information (*id.* ¶ 54(a), (e)-(g)); past discussions with clients and explanations of services (*id.* ¶ 54(a), (g)); and "research" on client and industry developments. *Id.*

¶¶ 54(b)-(f), 55.  Plaintiffs claim that upon her arrival to Ahalogy, Monica "immediately began using the information she had stolen from Plaintiffs."  *Id.* ¶ 56.  However, Plaintiffs only provide one alleged example of such use: Plaintiffs claim that on August 24, 2017, Monica "reached out to inform a specific client of Plaintiffs that she was leaving Plaintiffs," and that a month later, she contacted this client to convey her new employer and request a meeting.  *Id.* ¶ 57.

### *Plaintiffs' Claims*

Plaintiffs filed a complaint against Monica and Ahalogy on March 29, 2018, over seven months after Monica resigned from Collective Bias.  *See* Compl.  The Complaint alleges breach of non-competition and non-solicitation clauses (both under the Collective Bias Agreement and the CAPRAA), trade secret misappropriation, violation of the Computer Fraud and Abuse Act, and common law claims.  *Id.*  Plaintiffs have not moved for a temporary restraining order or preliminary injunction in this case, nor have Plaintiffs alleged that they lost any customers or accounts as a result of Defendants' actions.

## LEGAL STANDARD

In order to survive dismissal under Rule 12(b)(6), Plaintiffs "must 'state a claim to relief that is plausible on its face.'"  *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Factual allegations are accepted as true at the pleading stage, but 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'"  *Id.* (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

I. **PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED BECAUSE THE RESTRICTIVE COVENANTS THAT MONICA SIGNED ARE UNENFORCEABLE AS A MATTER OF LAW.**

Plaintiffs have brought claims against Monica for breach of non-competition and non-solicitation clauses under both the Collective Bias Agreement (Count III) and the subsequently-signed CAPRAA (Count IV), presumably to see whether either count can survive pleadings standards. Neither claim is valid, as both contracts are unenforceable either in whole or in part.

### A. The Collective Bias Agreement Is Unenforceable as a Matter of Law.

#### 1. The Collective Bias Agreement Was Superseded by the CAPRAA And Is Therefore Unenforceable.

Plaintiffs bring a claim for breach of contract under the Collective Bias Agreement (Count III). However, the Collective Bias Agreement is unenforceable as a matter of law because it was superseded by the CAPRAA; the parties, by signing the CAPRAA and including an unambiguous integration clause in the CAPRAA, intended that any prior agreements between Monica and Plaintiffs be extinguished.

In examining contractual terms, this Court must give effect to the intent of the parties. *Schultz v. Ill. Farmers Ins.*, 930 N.E.2d 943, 948 (Ill. 2010). The Collective Bias Agreement was signed by Monica and representatives of Collective Bias on November 16, 2015. *See* Collective Bias Agreement, ECF No. 1-1. In Section 12, the Collective Bias Agreement provides that it "may be modified or amended, if the amendment is made in writing and is signed by both parties." *Id.* § 12. On December 23, 2016, Monica signed the CAPRAA, an agreement between Monica and Inmar and "its subsidiary companies," *i.e.* Collective Bias. *See* CAPRAA, at 1, ECF No. 1-2; *see also* Compl. ¶¶ 10, 37 (Plaintiffs alleging that Collective Bias is a subsidiary of Inmar). Section 21.4 of the CAPRAA contains an integration clause stating the following: "This CAPRAA is the

*final, complete and exclusive* agreement of the parties with respect to the subject matter hereof and *supersedes and merges all prior discussions between us*." CAPRAA § 21.4 (emphasis added). In other words, the parties intended that the restrictive covenants in the Collective Bias Agreement be superseded by those in the CAPRAA. *See Avery Dennison Corp. v. Naimo*, No. 06 C 3390, 2006 WL 3343762, *3-4 (N.D. Ill. Nov. 16, 2006) (dismissing an employer's breach of contract claim under a non-compete because the parties signed a subsequent severance agreement that superseded the original restrictive covenant); *see also Henley Paper Co. v. McAllister*, 117 S.E.2d 431, 435 (N.C. 1960) (finding that a contract with restrictive covenants was superseded by a second contract that omitted the covenants). Thus, the Collective Bias Agreement is unenforceable, and this Court should dismiss Count III with prejudice.

      **2.**     **Even if the Collective Bias Agreement Was Not Superseded, Its Non-Competition Clause Is Facially Unreasonable in Its Terms.**

Even if the Collective Bias Agreement was not superseded by the CAPRAA, it contains a non-competition clause that is an unenforceable *per se* restriction on Monica's right to earn a living in her chosen field. This clause prohibits Monica from "render[ing] services," without any qualification whatsoever, to "any social media or shopper marketing company or agency in the United States that is a direct competitor . . . ." Collective Bias Agreement § 5a. In other words, Monica is barred from being employed by a competitor of Collective Bias, regardless of the potential role that Monica may have. The Collective Bias Agreement also contains a Michigan choice of law clause. Under Michigan law, there are no set of facts or any legitimate business interest that would justify a complete bar on working *in any capacity* for a competitor. *See Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 679 (E.D. Mich. 2015) (holding that a non-compete that

barred any employment with a competitor was unreasonable);[1] *New World Sys. Corp. v. Jones*, No. 06–11603, 2009 WL 996954, at *12 (E.D. Mich. Apr. 14, 2002) ("A limitation on working in any capacity for a competitor of a former employer is too broad to be enforceable.").

Furthermore, to the extent that Michigan law would enforce such an overly-broad clause, the choice of law analysis set forth in *Brown & Brown, Inc. v. Mudron* instructs this Court to instead apply Illinois law. 887 N.E.2d 437, 440 (Ill. App. Ct. 2008) (discussed in greater detail *infra*). Illinois courts find that a non-competition clause that bars a former employee from working for a competitor in any capacity is unenforceable as a matter of law. *See Dumrauf*, 2018 WL 1859039, at *3 (granting motion to dismiss and holding that a non-compete that barred any type of employment for a competitor was facially unreasonable); *Stunfence, Inc. v. Gallagher Sec. (USA), Inc.*, No. 01 C 9627, 2002 WL 1838128, at *7 (N.D. Ill. Aug. 12, 2002) (same).

**B.    The Restrictive Covenants in the CAPRAA Are Unenforceable.**

Plaintiffs are also seeking to have this Court enforce the restrictive covenants in the CAPRAA. These covenants are unenforceable as a matter of law, for several reasons.

**1.    The CAPRAA's Restrictive Covenants Are Unenforceable Because They Were Not Made as Part of an Employment Agreement.**

As an initial matter, the CAPRAA has a North Carolina choice of law clause. Under North Carolina law, the CAPRAA's restrictive covenants are invalid because they were not made as part of an employment contract. *See Copypro, Inc. v. Musgrove*, 754 S.E.2d 188, 191 (N.C. Ct. App.

---

[1]    The court in *Mapal*, at the motion to dismiss stage, significantly rewrote the non-compete pursuant to an authorizing Michigan statute, and then enforced it as judicially written. *Id.* at 681. Illinois courts, however, will not rewrite a *per se* unenforceable non-compete on public policy grounds. *See Medix Staffing Sols., Inc. v. Dumrauf*, No. 17 C 6648, 2018 WL 1859039, at *3 (N.D. Ill. Apr. 17, 2018) ("[W]here [an agreement] involves a covenant not to compete whose provisions are so broad as to be a ban on competition *per se*, courts should refuse to enforce or modify the agreement."). To hold otherwise would disincentivize parties from drafting reasonable clauses.

2014) (stating that restrictive covenants against an employee must be "made a part of the employment contract"). Here, it is undisputed that the CAPRAA, by its terms, is not an employment agreement with Monica. *See* CAPRAA § 21.3 (stating that the CAPRAA does not confer any employment rights and that such matters "are governed exclusively by the employment agreement between the Company and you, if any"). Thus, Plaintiffs cannot enforce the restrictive covenants in Sections 7 and 8 of the CAPRAA.

### 2. Alternatively, the CAPRAA's Restrictive Covenants Fail for Lack of Consideration.

As alleged by Plaintiffs, the CAPRAA became effective on December 27, 2016, and Monica resigned on August 24, 2017; under established law, Monica's employment of less than eight months is not enough to provide consideration for the CAPRAA's restrictive covenants. Under North Carolina law, Plaintiffs were required to provide Monica with additional value in exchange for agreeing to burdensome restrictive covenants that hindered her future. *See Mastrom, Inc. v. Warren*, 196 S.E.2d 528, 530 (N.C. Ct. App. 1973) (finding that a non-compete was unenforceable because it was forced upon an existing employee, who did not receive any new consideration in exchange for signing it); *Cline v. Dahle*, 563 S.E.2d 307, at *4-5 (N.C. Ct. App. 2002) (holding the same); *Amerigas Propane, L.P. v. Coffey*, No. 14 CVS 376, 2015 WL 6093207, at *5-6 (N.C. Super. Ct. Oct. 15, 2015) (same).

Here, the CAPRAA fails for lack of consideration. Monica was an employee of Collective Bias, and after Inmar acquired Collective Bias, Monica continued to be an employee of Collective Bias. *See* Compl. ¶ 37 ("After the transaction, Collective Bias retained its name and continued to operate as its own entity . . . ."). Plaintiffs never allege any specific consideration that was provided to Monica for the CAPRAA; rather, they generally conclude that "additional benefits" were provided. *Id.* ¶ 38. This conclusory statement is not enough to allege sufficient consideration.

*See Adams*, 742 F.3d at 728 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

And, to the extent that North Carolina would enforce the CAPRAA's restrictive covenants, this Court should not enforce these covenants under Illinois law for public policy reasons. Illinois has strict standards regarding the necessity of consideration in exchange for an employee signing a non-compete. In *Mudron*,[2] the court disregarded a Florida choice of law clause in a non-competition agreement and instead applied Illinois law due to the Illinois' public policy standards in favor of employees. *Id.* And, in the context of consideration, the court, applying Illinois law, held that seven months of continued employment was a "short period of time" that was "not sufficient consideration under Illinois law to support the restrictive covenant." *Id.* at 441. Here, Monica signed the CAPRAA on December 27, 2016, and Monica resigned on August 24, 2017; this short period is not enough continued employment to constitute valid consideration under Illinois law. This Court should hold that the CAPRAA is unenforceable. *See also Mid-Town Petroleum, Inc. v. Gowen*, 611 N.E.2d 1221, 1226 (Ill. App. Ct. 1993) (holding that seven months of continued employment is not sufficient consideration to support a restrictive covenant); *Diedrich Ins. Agency, LLC v. Smith*, 2011 IL App (5th) 100048, ¶ 12 (holding that mere months of continued employment was not sufficient consideration).

### 3.    The CAPRAA's Non-Competition Clause Is Facially Unreasonable.

Furthermore, the CAPRAA's non-competition clause is a facially unreasonable restraint upon fair competition and therefore unenforceable. Section 7 of the CAPRAA prohibits Monica

---

[2]    The court in *Mudron* also looked at the employee's connections to each state. 887 N.E.2d at 440. Here, it is undisputed that Monica is a resident of Illinois (Compl. ¶ 11), and Plaintiffs never allege that she had any nexus with North Carolina. Given Illinois' public policy concerns regarding the protection of employees and the holding of *Mudron*, this Court should not require the CAPRAA to be supported by less consideration than what Illinois courts would allow.

from working for any competitor in the same or substantially the same category in which she engaged in the "Business," and Section 11 defines "Business" in circular fashion as essentially any "business or service . . . for which you have provided services during the term of your employment." CAPRAA, §§ 7, 11.1. This vague clause has no grammatical meaning, and that is why Plaintiffs seek to use it broadly to bar Monica from the marketing industry as a whole.[3] Barring Monica from an entire industry is patently unreasonable and does not serve to protect any legitimate business interests of Plaintiffs. *See Farr Assocs., Inc. v. Baskin*, 530 S.E.2d 878, 882 (N.C. Ct. App. 2000) (dismissing claim based upon an unreasonably broad non-compete); *Dumrauf*, 2018 WL 1859039, at *3 (same).

## C. Plaintiffs Have Not Alleged that Monica Breached Any Non-Solicitation Obligations or Caused Any Damages.

Even if Plaintiffs could enforce the non-solicitation clauses in either the Collective Bias Agreement or the CAPRAA, Plaintiffs have not sufficiently alleged that Monica ever breached such clauses or caused any damages. Plaintiffs merely conclude that Monica is soliciting customers. At best, Plaintiffs merely allege that Monica contacted one customer[4] on the last day of her employment with Collective Bias, and then called this customer once on behalf of Ahalogy. Compl. ¶ 57. Moreover, Plaintiffs never allege that they lost any customers or accounts. This bare allegation is not enough to meet Plaintiffs' burden to allege breach, causation and damages. *See Stericycle, Inc. v. Carney*, No. 12 C 9130, 2013 WL 3671288, at *6 (N.D. Ill. July 12, 2013) (dismissing restrictive covenants claim due to inadequate factual allegations regarding breach). Plaintiffs furthermore have not alleged any facts supporting its conclusion that Monica shared

---

[3]    Understanding the scope of this clause would require discovery on every specific task Monica ever engaged in on behalf of Collective Bias during the entire history of her employment.

[4]    Plaintiffs never provide any detail as to this specific customer, let alone specify the relationship that Monica had with this customer prior to leaving Collective Bias.

confidential customer information with Ahalogy, despite Monica resigning seven months ago and Plaintiffs having seven months to develop their case theory. *See id.* ("If [plaintiff] has some basis to support its conclusory allegation that [defendant] shared confidential information with [his new employer], it is incumbent on [plaintiff] to include at least some factual allegations in its complaint"). For this reason, Plaintiffs' breach of contract claims should be dismissed.

### D. The Confidentiality Agreements in the Collective Bias Agreement and the CAPRAA Are Unenforceable.

Plaintiffs also seek to enforce the confidentiality provisions in the Collective Bias Agreement and the CAPRAA, however, these provisions are not limited in time or geographic scope. Thus, under Illinois law, these provisions do not provide any greater protection or confer any greater rights other than what is provided under the ITSA; to the extent that Plaintiffs claim otherwise, the agreements are unenforceable. *See Carlson Grp., Inc. v. Davenport*, No. 16 C 10520, 2016 WL 7212522, at *5 (N.D. Ill. Dec. 13, 2016) (holding that an unlimited employee confidentiality clause was unenforceable); *Packaging v. Hein*, No. 14 C 9670, 2015 WL 6164957, at *7-8 (N.D. Ill. Oct. 20, 2015) (same).

## II. PLAINTIFFS' TRADE SECRET CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs also bring trade secret misappropriation claims under the ITSA and the Defend Trade Secrets Act ("DTSA"). These claims fail as a matter of law.

### A. Plaintiffs Have Not Alleged a Valid Trade Secret Under Either the ITSA or the DTSA.

In order to maintain an ITSA claim, Plaintiffs must allege that the subject information was (a) a trade secret, (b) misappropriated and (c) used in the defendant's business. *Kim v. Dawn Food Prods., Inc.*, 206 F. App'x 558, 560 (7th Cir. 2006). To establish a trade secret, the ITSA requires that Plaintiffs point to a specific type of information that: "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can

obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d). The DTSA has a similar definition of what constitutes a valid trade secret, and courts often construe the ITSA and DTSA together on this issue. *See* 18 U.S.C. § 1839(3); *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2018 WL 636769, at *4 n.7 (N.D. Ill. Jan. 31, 2018) (stating that another state's definition of "trade secret" is "substantially similar to the DTSA and ITSA definitions").

### 1. Plaintiffs Have Not Sufficiently Alleged a Single Trade Secret.

Plaintiffs initially attempt to describe trade secrets by discussing their trademarked or copyrighted technology platforms. *See* Compl. ¶¶ 24-28. These documents are, by their publicly-registered nature, not secret. *See, e.g.*, *Phillips v. Avis, Inc.*, No. 95 C 1566, 1996 WL 288782, at *3 (N.D. Ill. May 29, 1996) (holding that the information was not a trade secret because "it was readily available through the Copyright Office"). Putting this aside, the relevant inquiry is not whether Plaintiffs can generally describe confidential information used in their business. Rather, the focus must be on whether the documents Plaintiffs allege Monica misappropriated contain trade secrets. This is a much narrower inquiry that renders significant portions of the Complaint, such as Paragraphs 13-28 and 77-80, irrelevant. *See Segerdahl Corp. v. Ferruzza*, No. 17 C 3015, 2018 WL 828062, at *3 (N.D. Ill. Feb. 10, 2018) ("Although [the plaintiff] makes more definite allegations of what constitutes trade secrets elsewhere in the complaint, none of those allegations relate to the alleged misappropriation by [the defendant]"); *Allied Benefit Sys., Inc. v. Ramirez*, 188 F. Supp. 3d 704, 707 (N.D. Ill. 2015) (dismissing complaint where the plaintiff could not identify any confidential information that the defendant actually disclosed or used); *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632, 2015 WL 94235, at *6 (N.D. Ill. Jan. 5, 2015) ("The court cannot analyze whether a piece of information was sufficiently secret to derive economic value or

whether [the plaintiff] took reasonable efforts to keep information secret without first knowing, with particularity, what information comprises the secret.").

Plaintiffs' trade secret claims can be distilled to Paragraphs 54-55 of the Complaint, which discuss a few emails that Monica allegedly forwarded to herself before resigning from Collective Bias. In these paragraphs, Plaintiffs describe email content consisting of three categories: (1) client "contact information" (Compl. ¶ 54(a), (e)-(g)); (2) "research" on market and client trends (*id.* ¶¶ 54(b)-(f), 55); and (3) summaries of client "discussions," undefined "plans," and "talking points." *Id.* ¶ 54(a), (c), (f). None of these categories denote a trade secret under the law.

Plaintiffs' first category, client contact information, is not a trade secret. *See Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134, 1153 (Ill. App. Ct. 2009) (dismissing complaint because client contact information did not meet the definition of a trade secret); *Sys. Dev. Servs., Inc. v. Haarmann*, 907 N.E.2d 63, 75 (Ill. App. Ct. 2009) ("Locating potential customers is merely a matter of identifying businesses in a particular town, county, or area and looking up their contact information."). Plaintiffs' second general category, "research," fares no better. Plaintiffs' alleged research consists of "the nationwide distribution of brand names for a client" (Compl. ¶ 54(b)), a client's "marketing strategies" (*id.* ¶ 54(c)), client "sales" and "priorities" (*id.* ¶ 54(d)-(e)), and "developments in a subset of the beverage industry." *Id.* ¶ 54(f). This Court can infer that such information, as described by Plaintiffs, is "within the realm of general skills and knowledge in the industry." *Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 617 (Ill. App. Ct. 1998) ("[I]nformation generally known or understood within an industry even if not to the public at large" does not warrant trade secret protection. "It is well established that a product or service that is within the realm of general skills and knowledge in the industry cannot be a trade secret."). Plaintiffs bear the burden to overcome this logical interpretation, and they fail. Indeed, Plaintiffs cannot show

why general "marketing" research is by its nature a trade secret. Merely referring to "research," without specifying who created the research, where the underlying information was derived or the time and the money it took to develop the research, is insufficient under Rule 12(b)(6). *See Hein*, 2015 WL 6164957, at *3 (partially dismissing trade secret claim because plaintiff did not meet its burden of alleging the effort, time and resources used to develop a compilation).

Finally, Plaintiffs' other phrases, such as "plans," "summaries of client discussions" and "talking points," are not specific enough to meet Plaintiffs' pleadings burden under the ITSA. *See Carpenter v. Aspen Search Advisers, LLC*, 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (dismissing complaint because the plaintiff only alleged broad categories of information as trade secrets); *Segerdahl Corp.*, 2018 WL 828062, at *3 (dismissing complaint where the plaintiff only alleged broad areas of technology as trade secrets); *Thermal Zone Products Corp. v. Echo Eng., Ltd.*, No. 93 C 556, 1993 WL 358148, at *5 (N.D. Ill. Sept. 4, 1993) (dismissing complaint that merely referenced "plans" and "specifications" because such "blanket generalizations . . . failed to specify with any exactitude which pieces of information actually constitute trade secrets."). And, as Plaintiffs describe them, these categories are information that either has been disseminated to clients (*i.e.* client discussion summaries), or information intended to be shared (*i.e.* talking points). *See Hein*, 2015 WL 6164957, at *4 ("But as the defendants point out, information shared with customers with no confidentiality restrictions attached to them does not warrant trade secret protection."). None of these are secrets. To hold otherwise would allow a plaintiff to harass an individual worker in protracted litigation merely through the use of conclusory phrases. *See Adams*, 742 F.3d at 728 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

14

### 2. Plaintiffs Have Not Sufficiently Alleged How They Safeguarded Alleged Trade Secrets.

Furthermore, both the ITSA and DTSA require Plaintiffs to provide allegations showing that they have taken steps to adequately maintain the secrecy of alleged trade secrets. Plaintiffs generally allege that they have safeguarding policies. Compl. ¶ 80. There are, however, no allegations as to how Plaintiffs safeguarded the specific information alleged in Paragraphs 54 and 55; Plaintiffs do not allege: (1) who or how many people had access to these documents; (2) when these documents were created; (3) whether they were taken from a safeguarded network or internally available to all employees. Plaintiffs do not even allege who owned the data: Inmar or Collective Bias. Thus, the Complaint does not meet Rule 12(b)(6) pleading requirements and should be dismissed. *See Alpha Sch.*, 910 N.E.2d at 1153 (dismissing trade secret claim because plaintiffs did not allege how trade secrets were maintained).

### B. Plaintiffs Have Not Sufficiently Alleged Wrongful Use of Trade Secrets by Ahalogy.

Finally, Plaintiffs have not pled that Defendants actually used Plaintiffs' trade secrets in their business. Rather, Plaintiffs merely speculate as to use. Despite allegedly conducting a damages assessment (*see* Compl. ¶ 114) and possessing the computer devices that Monica used to allegedly send herself information, Plaintiffs never assert that Monica sent any specific trade secret to Ahalogy. Plaintiffs also never allege that they lost any customer account or business at all, much less business related to a specific trade secret wrongfully taken. *See id.* At best, and after *seven months* have passed since Monica left Collective Bias, Plaintiffs merely conclude, in *one allegation,* without any facts, that Defendants have won "new customers" based upon wrongful use of Plaintiffs' trade secrets. *Id.* ¶ 81. This lone conclusion cannot be enough to sustain Plaintiffs' pleadings burden. *See Woodard v. Harrison*, No. 08–2167, 2008 WL 4724370, at *3 (C.D. Ill. Oct. 24, 2008) (dismissing trade secret complaint because plaintiff did not allege "use"

other than speculating as to future harm); *Abbott Labs. v. Chiron Corp.*, No. 97 C 0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997) (finding that complaint did not sufficiently allege misappropriation and use); *see also Alpha Sch.*, 910 N.E.2d at 1155 ("[P]laintiffs failed to properly plead that defendants used the information in their business, which is also a required element in a misappropriation of trade secrets claim."). Nor should this Court infer that Defendants are using stolen trade secrets merely because Monica is engaged in marketing sales. *See Allied Benefit*, 188 F. Supp. 3d at 707 (dismissing complaint and stating that "the mere fact that a person assumed a similar position at a competitor does not, without more, make it inevitable that he will use or disclose trade secret information." (internal citations omitted)). For these reasons, Plaintiffs' trade secret claims fail as a matter of law.

## III. PLAINTIFFS FAIL TO PLEAD A VALID CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT.

This Court should also dismiss Plaintiffs' Count V claim under the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. 1030, *et seq.*), because Plaintiffs fail to allege that Defendants' actions damaged any of Plaintiffs' computer systems. Instead, Plaintiffs seek to rehash their trade secret allegations as a CFAA claim, despite the fact that "Congress intended to restrict civil actions brought under CFAA." *TriTeq Lock & Sec. LLC v. Innovative Secured Sols., LLC*, No. 10 CV 1304, 2012 WL 394229, at *7 (N.D. Ill. Feb. 1, 2012) (J. Norgle); *see Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1018 (N.D. Ill. 2014) ("The 'underlying concern of the [CFAA] is damage to data and . . . the statute was not meant to cover the disloyal employee who walks off with confidential information.'" (alteration in original) (citations omitted)); *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 813 (N.D. Ill. 2009) ("The CFAA should not be used to prosecute employees who are merely disloyal.").

Plaintiffs have brought CFAA claims under 18 U.S.C. 1030(a)(2)(C), (a)(5)(C) and (b).[5]
A claim under Section (a)(2)(C) of CFAA requires allegations of either "damage" or "loss," as
those terms are defined by statute, and a Section (a)(5) claim requires allegations of *both* damage
and loss. *TriTeq*, 2012 WL 394229, at *6. The Complaint does not adequately plead facts that
support either term. CFAA defines "damage" as "any impairment to the integrity or availability
of data, a program, a system, or information." 18 U.S.C. 1030(e)(8); *see TriTeq*, 2012 WL 394229,
at *6 (holding that the term "damage" refers to "the destruction, corruption, or deletion of
electronic files, the physical destruction of a hard drive, or any diminution in the completeness or
usability of the data on a computer system." (internal quotations omitted)). Plaintiffs have not
alleged that Monica's actions damaged any aspect of Plaintiffs' computer systems. *See* Compl. ¶¶
110-16.

Despite this omission, Plaintiffs attempt to circumvent CFAA's statutory intent by instead
alleging that they suffered "loss" consisting of a "damage assessment, which is ongoing and will
exceed $5,000 well before the expiration of a one year period." *Id.* ¶ 114. This allegation is
insufficient under CFAA; a forensics examination does not constitute "loss" unless it follows
conduct that actually caused computer damage or service interruption. *TriTeq*, 2012 WL 394229,
at *7 (dismissing CFAA claim because the plaintiff "ha[d] not alleged that the costs it incurred
followed a CFAA offense that damaged its computers or computer systems, or that its service was
interrupted"); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 998 (N.D. Ill. 2011)
(dismissing CFAA claim because the plaintiff "ha[d] not alleged any facts connecting its purported
'loss' to an interruption of its computer systems"); *Cassetica Software, Inc. v. Comput. Scis. Corp.*,

---

[5]    Under CFAA, claims under Section 1030(b) contain the pleading requirements of
Section (a) in regards to damages and loss. *See* 18 U.S.C. 1030(b).

No. 09 C 0003, 2009 WL 1703015, at *4 (N.D. Ill. June 18, 2009) (Alleged costs incurred in "assessing and responding to the improper actions of [the defendant]" fall outside CFAA's definition of "loss" because the plaintiff "ha[d] not properly alleged that it incurred an interruption of service or an impairment of data."). To hold otherwise would "impermissibly broaden the applicability of CFAA to provide seemingly unfettered access to federal courts to adjudicate state law issues incidental to computer use." *TriTeq*, 2012 WL 394229, at *7.[6]

Finally, and as a separate basis for dismissal, Plaintiffs fail to allege damages in excess of CFAA's $5,000 threshold. *See* 18 U.S.C. 1030(c)(4). Instead, Plaintiffs merely speculate that they will suffer such an amount in a year's time. *See* Compl. ¶ 114. Under CFAA, this is insufficient. CFAA requires Plaintiffs to allege not only that they suffered (*past tense*) $5,000 in damages, but also "damages as well as an explanation for how [Defendants'] conduct caused them." *Tamlyn v. Bluestone Advisors, LLC*, No. 17 C 8893. 2018 WL 1920184, at *3 (N.D. Ill. Apr. 24, 2018). Plaintiffs "cannot hope to limp into court on inference alone." *Id.* For these reasons, Plaintiffs' CFAA claim fails as a matter of law.

## IV. PLAINTIFFS' COMMON LAW CLAIMS ARE ALL PREEMPTED BY THE ITSA AND ALTERNATIVELY, FAIL TO STATE A CLAIM.

Plaintiffs bring common law claims against Defendants based upon tortious interference with contract (Count VI); conversion (Count VII); trespass to chattels (Count VIII); unjust enrichment (Count IX); and civil conspiracy (Count X). All of these claims are preempted by the ITSA. The ITSA preempts "conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." *See* 765 ILCS 1065/8.

---

[6] There are some district courts in the Northern District of Illinois that hold a contrary view and allow a plaintiff to bring a CFAA claim without alleging any damage or interruption to its computer systems. In *TriTeq*, this Court rejected such an interpretation, following other cases in the Northern District that refuse to allow plaintiffs to rehash trade secret claims as CFAA allegations. *Id.*

The Seventh Circuit has applied the preemptive language of the ITSA broadly, even where the alleged information wrongfully taken does not rise to the level of a trade secret. *See Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) (finding unjust enrichment claims preempted); *Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 920 (N.D. Ill. 2014) (recognizing the broad preemptive reach of the ITSA).

### A. Plaintiff's Tortious Interference Claim Against Ahalogy Should Be Dismissed Because It Is Preempted and Also Fails to State a Valid Claim.

In Count VI, Plaintiffs bring a claim against Defendants for tortious interference with contract. To the extent that Plaintiffs interpret Count VI based upon Ahalogy's alleged use of Plaintiffs' confidential information, this claim is preempted by the ITSA. *See Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (finding that tortious interference claim was preempted); *Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 410 (N.D. Ill. 2001) (same); *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 959 (N.D. Ill. 2002) (same).

Furthermore, Count VI fails to plead the elements of a tortious interference claim, which are: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages." *Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011). First, the Collective Bias Agreement and the CAPRAA are unenforceable. *See supra.* Second, Plaintiffs merely allege that Ahalogy hired Monica "with the knowledge and intent that [Monica] would breach those contracts as its new Director of Sales." Compl. ¶ 119. This allegation is not enough to allege inducement and wrongful conduct on the part of Ahalogy. To be liable for tortious interference, a defendant must have been shown to have "caused the

19

interference," through "active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Chocolate Indus., Inc. v. Cornerstone Promotion, Inc.*, No. 11 C 4649, 2012 WL 3598754, at \*2 (N.D. Ill. Aug. 20, 2012) (citing Illinois case law). "Lawful competition does not constitute unjustified interference." *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 807 (N.D. Ill. 2011). And, Plaintiffs have failed to specify how they have been damaged; there are no allegations of lost customers or accounts based upon specific actions by Ahalogy. Count VI therefore must be dismissed.

**B.     Plaintiff's Conversion, Unjust Enrichment, Trespass to Chattel and Civil Conspiracy Claims Are All Preempted by the ITSA.**

Plaintiffs' Count VII conversion claim alleges that Monica failed to return confidential information to Plaintiffs, and is instead "using" and "disclosing" this information. Compl. ¶¶ 122-25. These same theories are rehashed in Plaintiffs' trespass to chattel, unjust enrichment[7] and civil conspiracy claims; all of these claims are predicated upon Monica wrongfully disclosing and Defendants wrongfully using Plaintiffs' confidential information. These claims are nothing more than relabeled trade secret misappropriation claims, and are preempted by the ITSA. *See Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*, 190 F. Supp. 3d 812, 825 (N.D. Ill. 2016) (holding that conversion claim was preempted under the ITSA); *Cronimet Holdings*, 73 F. Supp. 3d at 919-20 (holding that unjust enrichment claim was preempted); *Segerdahl Corp.*, 2018 WL 828062, at \*7 (holding that civil conspiracy claim was preempted). As Plaintiffs have

---

[7]     Plaintiffs' unjust enrichment claim fails on an additional, separate basis because it references existing contracts between the parties. When a contract governs a relationship between two parties, neither party may bring a claim of unjust enrichment unless the claim falls outside the contract. *See Liautaud v. Liautaud*, 221 F.3d 981, 989 (7th Cir. 2000) ("We also agree with the district court that Illinois law does not allow a claim for unjust enrichment when the underlying contract has been held to be void as against public policy.").

simply re-pled their misappropriation claim in the guise of various common law claims, they should all be dismissed with prejudice.

## **CONCLUSION**

For the abovementioned reasons, Defendants respectfully request that the Complaint be dismissed in its entirety with prejudice, and for any other relief that this Court deems proper.

Dated: May __, 2018

Respectfully submitted,

MLW SQUARED, INC., d/b/a AHALOGY

/s/ _____
One of Defendant Monica Murphy Vargas'
attorneys

Kristen E. Hudson (ARDC #6281191)
khudson@chuhak.com
Ryan A. Haas (ARDC #6283020)
rhaas@chuhak.com
CHUHAK & TECSON, P.C.
30 South Wacker Drive, Suite 2600
Chicago, Illinois 60606
Telephone: 312-444-9300

/s/ _____
One of Defendant MLW Squared, Inc.,
(d/b/a Ahalogy) attorneys

Carrie A. Hall (ARDC #6269884)
cahall@taftlaw.com
Daniel R. Saeedi (ARDC #6296493)
dsaeedi@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone: 312-527-4000

22375407.3