**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

INMAR, INC. and COLLECTIVE BIAS, INC.,

                    Plaintiffs,

           -v-

MONICA MURPHY VARGAS and MLW
SQUARED, INC. d/b/a AHALOGY,

                    Defendants.

Case No.: 18cv02306

Judge: Charles R. Norgle, Sr.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

---

Andrew C. Porter
Justin O. Kay
Matthew M. Morrissey
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:   (312) 569-3000

*Counsel for Plaintiffs*

July 13, 2018

## <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF THE COMPLAINT............................................................................................1

ARGUMENT .........................................................................................................................2

    I.      Illinois Substantive Law Does Not Apply to the Agreements. .................................2

    II.     Plaintiffs Adequately Plead that the CAPRAA is Enforceable. .............................4

    III.    Plaintiffs Adequately Plead that the Collective Bias Agreement is
          Enforceable. ........................................................................................................8

    IV.    Plaintiffs Adequately Plead Claims Under the Illinois Trade Secret Act
          and the Defend Trade Secrets Act. ......................................................................11

    V.     Plaintiffs Adequately Plead a Violation of the Computer Fraud and Abuse
          Act.....................................................................................................................18

    VI.    Plaintiffs' Claims are Not Preempted by ITSA. ...................................................20

    VII.   Plaintiffs Adequately Plead Tortious Interference with Contract.........................21

CONCLUSION.....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Laboratories v. Chiron Corp.*,
No. 97 C 0519, 1997 WL 208369 (N.D. Ill. Apr. 23, 1997)....................................................17

*ACS Partners, LLC v. Americon Group, Inc.*,
No. 3:09cv464-RJC-DSC, 2010 WL 883663 (W.D.N.C. Mar. 5, 2010)..................................7

*Akzo Nobel Coatings Inc. v. Rogers*,
No. 11 CVS 3013, 2011 WL 5316772 (N.C. Super. Ct. Nov. 3, 2011) ...................................5

*Allied Benefit Systems, Inc. v. Ramirez*,
188 F. Supp. 3d 704 (N.D. Ill. 2015) ...............................................................................15, 17

*Allied Waste Servs. of N. Am., LLC v. Tibble*,
177 F. Supp. 3d 1103 (N.D. Ill. 2016) ....................................................................................7

*Alpha School Bus Co., Inc. v. Wagner*,
391 Ill. App. 3d 722 (1st Dist. 2009) .......................................................................15, 16, 17

*Amerigas Propane, L.P. v. Coffey*,
No. 14 CVS 376, 2015 WL 6093207 (N.C. Super. Ct. Oct. 15, 2015)....................................5

*Avery Denison Corp v. Naimo*,
No. 06 C 3390, 2006 WL 3343762 (N.D. Ill. Nov. 16, 2006)..................................................9

*Best Team Ever v. Prentice*,
No. 319026, 2015 WL 3874477 (Mich. Ct. App. June 23, 2015) ..........................................10

*Brown & Brown, Inc. v. Mudron*,
379 Ill. App. 3d 724 (3d Dist. 2008).......................................................................................4

*Bryan v. Lincare, Inc.*,
No. 99-74625, 2000 WL 156821 (E.D. Mich. Jan. 20, 2000) .................................................4

*Carpenter v. Aspen Search Advisers, LLC*,
10 C 6823, 2011 WL 1297733 (N.D. Ill. Apr. 5, 2011) ...................................................15, 16

*Chocolate Industries, Inc. v. Cornerstone Promotion, Inc.*,
No. 11 C 4649, 2012 WL 3598754 (N.D. Ill. Aug. 20, 2012)................................................22

*Christensen v. County of Boone*,
483 F.3d 454 (7th Cir. 2007) ................................................................................................16

*Cline v. Dahle*,
149 N.C. App. 975 (2002) .......................................................................................................5

ii

*Cody v. Harris*,
    409 F.3d 853 (7th Cir. 2005) ........................................................................21

*Composite Marine Propellers, Inc. v. Van Der Woude*,
    962 F.2d 1266 (7th Cir. 1992) ...............................................................15, 16

*Conley v. Nestle USA, Inc.*,
    No. 09-CV-5996, 2011 WL 332525 (N.D. Ill. Jan. 31, 2011) ...................6

*CopyPro, Inc. v. Musgrove*,
    232 N.C. App. 194 (2013) ............................................................................7

*Covenant Aviation Security, LLC v. Berry*,
    15 F. Supp. 3d 813 (N.D. Ill. 2014) ..........................................................17

*Cronimet Holdings, Inc. v. Keywell Metals, LLC*,
    73 F. Supp. 3d 907 (N.D. Ill. 2014) ..........................................................21

*Curtis 1000 v. Suess*,
    24 F.3d 941 (7th Cir. 1994) ..........................................................................9

*Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands International, Inc.*,
    616 F. Supp. 2d 805 (N.D. Ill. 2009) ........................................................19

*Echo, Inc. v. Timberland Machines & Irrigation, Inc.*,
    661 F.3d 959 (7th Cir. 2011) ......................................................................22

*Farr Associates, Inc. v. Baskin*,
    138 N.C. App. 276 (2000) ............................................................................7

*FDIC v. Binetti*,
    No. 10 CV 5083, 2011 WL 249461 (N.D. Ill. Jan. 26, 2011)...................12

*Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*,
    810 F.3d 1075 (7th Cir. 2016) ....................................................................19

*Fire 'Em Up, Inc. v. Technocarb Equipment. (2004) Ltd.*,
    799 F. Supp. 2d 846 (N.D. Ill. 2011) ..................................................12, 16

*Fleetwood Packaging v. Hein*,
    No. 14 C 09670, 2015 WL 6164957 (N.D. Ill. Oct. 20, 2015)................15

*Garon Foods v. Montieth*,
    No. 13-cv-214-JPG-PMF, 2013 WL 3338292 (S.D. Ill. July 2, 2013)....14

*Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*,
    No. 12-cv-01851, 2014 WL 1099039 (N.D. Ill. Mar. 20, 2014) ..............22

*GlobalTap LLC v. Elkay Mfg. Co.*,
    No. 13 C 632, 2015 WL 94235 (N.D. Ill. Jan 5. 2015) .........................15

*Hackman v. Dickerson Relators, Inc.*,
    520 F. Supp. 2d 954 (N.D. Ill. 2007) ................................................................22

*Hecny Transp., Inc. v. Chu*,
    430 F.3d 402 (7th Cir. 2005) .....................................................................20, 21

*Hejl v. Hood, Hargett, & Assocs., Inc.*,
    196 N.C. App. 299 (2009) ...........................................................................6

*Henley Paper Co. v. McAllister*,
    253 N.C. 529 (1960) ................................................................................4, 9

*IDS Fin. Svcs., Inc. v. Smithson*,
    843 F. Supp. 415 (N.D. Ill. 1994) ...................................................................8

*Instant Technology, LLC v. Defazio*,
    40 F. Supp. 3d 989 (N.D. Ill.2014) ................................................................19

*Interactive Sols. Grp., Inc. v. Autozone Parts, Inc.*,
    No. 11-13182, 2012 WL 1288173 (E.D. Mich. Apr. 16, 2012) ............................16

*IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*,
    304 F. Supp. 3d 746 (N.D. Ill. 2018) ..............................................................11

*Labor Ready, Inc. v. Williams Staffing. L.L.C.*,
    149 F. Supp. 2d 398 (N.D. Ill. 2001) .......................................................2, 3, 12

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
    342 F.3d 714 (7th Cir. 2003) ...........................................................11, 14, 15, 16

*Mapal, Inc. v. Atarsia*,
    147 F. Supp. 3d 670 (E.D. Mich. 2015) ...........................................................10

*Market America, Inc. v. Lee*,
    809 S.E.2d 32 (N.C. Ct. App., 2017) ...............................................................7

*Mastrom, Inc. v. Warren*,
    18 N.C. App. 199 (1973) ............................................................................5

*Maximum Indep. Brokerage, LLC v. Smith*,
    218 F. Supp. 3d 630 (N.D. Ill. 2016) ..............................................................21

*McAllister v. Smith*,
    17 Ill. 328 (1856) ..................................................................................3

*McCoy v. Iberdrola Renewables, Inc.*,
    760 F.3d 674 (7th Cir. 2014) .......................................................................2

*Medix Staffing Sols. v. Dumrauf*,
    No. 17 C 6648, 2018 WL 1859039 (N.D. Ill. Apr. 17, 2018)...............................10

iv

*Mission Measurement Corp. v. Blackbaud, Inc.*,
   216 F. Supp. 3d 915 (N.D. Ill. 2017) ................................................................11, 21

*Mission Measurement Corp. v. Blackbaud, Inc.*,
   287 F. Supp. 3d 691 (N.D. Ill. 2017) ........................................................................21

*Modrowski v. Pigatto*,
   712 F.3d 1166 (7th Cir. 2013) ...................................................................................20

*Modrowski v. Pigatto*,
   No. 09cv7002 (N.D. Ill. July 9, 2010) .......................................................................20

*Motorola, Inc. v. Lemko Corp.*,
   609 F. Supp. 2d 760 (N.D. Ill. 2009) .........................................................................19

*Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*,
   No. 11 C 2231, 2012 WL 1886550 (N.D. Ill. May 22, 2012) ......................................3

*Pampered Chef v. Alexian*,
   804 F. Supp. 2d 765 (N.D. Ill. 2011) .........................................................................22

*Pope v. Alberto-Culver Co.*,
   296 Ill. App. 3d 512 (1st Dist. 1998) .........................................................................15

*Potomac Leasing Co. v. Chuck's Pub, Inc.*,
   156 Ill. App. 3d 755 (2d Dist. 1987) .......................................................................3, 4

*R.J. O'Brien & Assocs., LLC v. Williamson*,
   No. 14 C 2715, 2016 WL 930628 (N.D. Ill. Mar. 10, 2016) ........................................7

*RKI, Inc. v. Grimes*,
   177 F. Supp. 2d 859 (N.D. Ill. 2001) .........................................................................17

*Rocha v. Rudd*,
   826 F.3d 905 (7th Cir. 2016) .....................................................................................16

*Schulenburg v. Signatrol, Inc.*,
   33 Ill. 2d 379 (1965) ..................................................................................................14

*Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*,
   78 F. Supp. 3d 852 (N.D. Ill. 2015) ...........................................................................22

*Shield Techs. Corp. v. Paradigm Positioning, LLC*,
   908 F. Supp. 2d 914 (N.D. Ill. 2012) .........................................................................12

*Spitz v. Proven Winners N. Am., LLC*,
   759 F.3d 724 (7th Cir. 2014) .....................................................................................21

*Stampede Tool Warehouse, Inc. v. May*,
   272 Ill. App. 3d 580 (1st Dist. 1995) .........................................................................13

*Stericycle, Inc. v. Carney*,
No. 12 C 9130, 2013 WL 3671288 (N.D. Ill. July 12, 2013) ...................................................8

*Stericycle, Inc. v. Simota*,
No. 16 C 4782, 2017 WL 4742197 (N.D. Ill. Oct. 20, 2017) ...................................................7

*Stevenson v. Parsons*,
96 N.C. App. 93 (1989) ...................................................................................................5, 6

*Superior Performers, Inc. v. Meaike*,
No. 1:13CV1149, 2014 WL 5819826 (M.D.N.C. Nov. 10, 2014) ...........................................6

*System Development Service, Inc. v. Haarmann*,
389 Ill. App. 3d 561 (5th Dist. 2009) ..................................................................................15

*Tamlyn v. Bluestone Advisors, LLC*,
No. 17 C 8893, 2018 WL 1920184 (N.D. Ill. Apr. 24, 2018) ...............................................20

*Thermal Zone Products Corp. v. Echo Engineering, Ltd.*,
No. 93 C 0556, 1993 WL 358148 (N.D. Ill. Sept. 4, 1993) ............................................15, 16

*TriTeq Lock and Security LLC v. Innovative Secured Solutions, LLC*,
No. 10 CV 1304, 2012 WL 394229 (N.D. Ill. Feb. 1, 2012) ............................................18, 19

*Troya Int'l, Ltd. Sti. v. Bird-X, Inc.*,
No. 15 C 9785, 2017 WL 6059804 (N.D. Ill. Dec. 7, 2017) .................................................12

*Turnell v. Centimark Corp.*,
796 F.3d 656 (7th Cir. 2015) ..........................................................................................3, 10

*United States ex rel. Iowa Based Milling, Ltd. Liab. Co. v. Fischer Excavating, Inc.*,
No. 4:12-cv-4082-SLD-JAG, 2014 WL 4638600 (C.D. Ill. Sep. 17, 2014)............................16

*Vencor, Inc. v. Webb*,
33 F.3d 840 (7th Cir. 1994) ...............................................................................................3

*Wachovia Ins. Svcs., Inc. v. McGuirt*,
No. 06 CVS 13593, 2006 WL 3720430 (N.C. Super. Ct. Dec. 19, 2006) ...............................9

*Whittaker Gen. Med. Corp. v. Daniel*,
324 N.C. 523 (1989) .......................................................................................................4, 9

*Woodard v. Harrison*,
No. 08-2167, 2008 WL 4724370 (C.D. Ill. Oct. 24, 2008)...................................................17

STATUTES & RULES

765 ILCS 1065/2 ...................................................................................................11, 13

18 U.S.C. § 1030.................................................................................................18, 19, 20

18 U.S.C. § 1836.......................................................................................................11

18 U.S.C. § 1839...................................................................................................11, 13

Plaintiffs Inmar, Inc. and Collective Bias, Inc. submit this memorandum in opposition to the motion to dismiss of Defendants Monica Murphy Vargas and MLW Squared, Inc. d/b/a Ahalogy.

## SUMMARY OF THE COMPLAINT

Collective Bias is an influencer marketing company that has spent many years and millions of dollars developing its services, which include its Social Fabric® Community, Shopper Social Media™ Platform, and Prescriptive IQ™ platform. Compl. ¶¶ 13-15, 23-28. In November 2015, Ms. Murphy accepted an offer to work at Collective Bias as its Senior Director of Business Development. *Id.* ¶ 29. As a part of the job offer, Ms. Murphy also agreed to maintain the confidentiality of certain information, and to limit the services she would provide and the clients and employees of Collective Bias she would solicit for one year following the end of her employment. *Id.* ¶¶ 29-31, 58-61. In December 2016, Inmar acquired Collective Bias, and Ms. Murphy signed the CAPRAA, which (like the Collective Bias Agreement) also included confidentiality requirements and restrictive covenants. *Id.* ¶¶ 36-38, 63-74.

In July 2017, Ms. Murphy began working with a recruiter who sought to fill a position at Ahalogy. *Id.* ¶ 48. Ahalogy is a direct competitor of Plaintiffs, which Ms. Murphy knew, and the role the recruiter sought to fill at Ahalogy was identical to Ms. Murphy's role working for Plaintiffs. *Id.* ¶¶ 47, 49-51. Ms. Murphy nevertheless interviewed with and accepted a job at Ahalogy. *Id.* ¶¶ 52-54. Shortly thereafter, she began secretly gathering confidential and proprietary information, documents, and property of Collective Bias and Inmar to use in her new role at Ahalogy. *Id.* Those actions included a nearly month-long campaign of impermissibly forwarding emails from her work account to her personal account that continued until the day she

resigned.  *Id.* ¶¶ 55.  Upon her arrival at Ahalogy, she began to use what she had taken from

Plaintiffs.  She also began contacting Plaintiffs' clients.  *Id.* ¶¶ 56-57.

## ARGUMENT

Defendants argue that this Court should decide as a matter of law based solely on the

allegations in the Complaint that the Collective Bias Agreement and CAPRAA are invalid, and

that the trade secrets Defendants appropriated are not "trade secrets."  But Defendants' arguments

rely on a calculated misrepresentation of the difference between pleading and proving claims.

Plaintiffs are not required to prove their claims now, only plead enough facts to make them

plausible.  They have done so.  Defendants also argue that Plaintiffs' claims under the Computer

Fraud and Abuse Act and Plaintiffs' common law claims fail, but their arguments are based on

unsupportable readings of the law.  Defendants' motion should be denied in its entirety, but if any

portion is granted, it should be with leave to amend.

**I.      Illinois Substantive Law Does Not Apply to the Agreements.**

At the outset, Defendants attempt to pick and choose the state law that seems to best suit

their particular argument.  To be clear, the Collective Bias Agreement has a Michigan choice of

law provision.  The CAPRAA has a North Carolina choice of law provision.  Those states' laws

should apply here, not Illinois.

"Federal courts hearing state law claims under diversity or supplemental jurisdiction apply

the forum state's choice of law rules to select the applicable state substantive law."  *McCoy v.*

*Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).  "Under Illinois law, a court will

enforce a contractual choice of law provision unless the law to be applied is 'repugnant to a strong

and fundamental policy of Illinois' or there is no relationship between the parties and the state

whose law is to be applied."  *Labor Ready, Inc. v. Williams Staffing. L.L.C.*, 149 F. Supp. 2d 398,

405 (N.D. Ill. 2001) (citation omitted).  "A court, however, may not raise a choice of law question

*sua sponte*; for choice of law to even be considered, one of the parties must actually raise and **argue** a potential conflict between the forum's law and the foreign entity's law." *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886550, at *11 n.14 (N.D. Ill. May 22, 2012) (emphasis in original) (citation and internal quotation marks omitted); *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) ("Choice-of-law arguments are normally waivable."). Defendants here do not argue that no relationship exists between the parties and Michigan or North Carolina or that these laws do not apply. Instead, Defendants suggest that insofar as their arguments under those state laws would lose, the laws of Michigan and North Carolina are against the public policy of Illinois.[1] But that is not the law.

The law of another state is not "repugnant to Illinois public policy because the laws of the two states could produce different outcomes." *Labor Ready*, 149 F. Supp. 2d at 407. This is because the Illinois Supreme Court has set a high bar for refusing to enforce a choice of law provision: "In the seminal case of *McAllister v. Smith*, . . . [the Illinois] supreme court stated that it would give effect to the laws of the site chosen 'where it is not dangerous, inconvenient, immoral, nor contrary to the public policy of the local government.'" *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 758, (2d Dist. 1987) (quoting *McAllister*, 17 Ill. 328, 333 (1856)). As the Seventh Circuit has explained, "there is a long way between, on the one hand, finding a covenant unenforceable and, on the other, declaring that its enforcement is so odious that a court will not respect the parties' election to be governed by the law of a state that would." *Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994). Defendants have not argued that the application of

---

[1] Defendants offer no reason why the choice of law provisions should not govern the confidentiality provisions of the Collective Bias Agreement and the CAPRAA—they merely argue that the confidentiality provisions are not enforceable under Illinois law. Def. Br. at 11. But Illinois law does not apply, and Defendants offer no argument it does.

Michigan and North Carolina law would be "contrary to pure morals and abstract justice" or "of evil example and harmful." *Potomac Leasing*, 156 Ill. App. 3d at 759.[2]  The laws of those states therefore govern the agreements here.

## II.  Plaintiffs Adequately Plead that the CAPRAA is Enforceable.

Under North Carolina law, restrictive covenants are enforceable where they are "(1) in writing," "(2) made part of a contract of employment," "(3) based on valuable consideration," "(4) reasonable both as to time and territory," and "(5) not against public policy." *Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 525 (1989).  Defendants do not contest that the CAPRAA is in writing or argue that it is against the public policy of North Carolina, but argue that the other three elements are not satisfied.[3]  These arguments fail.

First, Defendants are wrong that the CAPRAA is not an "employment agreement."  Def. Br. at 7.  The "Background Information" section at the outset of the CAPRAA states that part of the exchange of consideration provided to Ms. Murphy was "employment or engagement, or continued employment or engagement, as applicable, by the Company, and for the compensation paid to you now and in the future."  *See* Ex. A to Compl. at 1.[4]

---

[2] Defendants' reliance on *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724 (3d Dist. 2008) (Def. Br. at 7 & 9 n.2) is misplaced.  In *Brown & Brown*, the court refused to apply Florida law because it determined that a Florida statute "specifically prohibits" considering the hardship a covenant imposes on an employee, whereas Illinois law requires it.  379 Ill. App. 3d at 727-28.  Defendants have not, and cannot, identify any such prohibition under Michigan or North Carolina law.  *See, e.g.*, *Bryan v. Lincare, Inc.*, No. 99-74625, 2000 WL 156821, at *1 (E.D. Mich. Jan. 20, 2000) (noting that under Michigan law, a court evaluating a non-compete must weigh several factors, including "the interests of the party being restrained"); *Henley Paper Co. v. McAllister*, 253 N.C. 529, 534 (1960) (stating that under North Carolina law, one of the conditions for enforcing non-competes is that "they do not impose unreasonable hardship upon the [employee]") (citation and internal quotation marks omitted).

[3] Defendants nowhere address the fallback restrictions the Court could enforce if the other restrictions Defendants claim are overbroad are deemed overbroad.  *See* Compl. Ex. B, §§ 9, 10.1-10.6, 11.1-11.3.

[4] Defendants point to Section 21.3 of the CAPRAA in support of their argument, but that section is entitled "Continuing Employment" and merely reiterates that the CAPRAA does not alter the at-will nature of the relationship because it does not "confer any right with respect to **continuation** of employment."  Ex. B. to Compl. § 21.3 (emphasis added).  In any event, courts applying North Carolina law have rejected the

4

Second, Defendants are wrong that the CAPRAA "fails for lack of consideration" and that Plaintiffs have not sufficiently alleged the consideration. Def. Br. at 8. In *Amerigas Propane, L.P. v. Coffey*, No. 14 CVS 376, 2015 WL 6093207 (N.C. Super. Ct. Oct. 15, 2015)—which Defendants invoke for the proposition that Ms. Murphy's employment was not sufficient consideration for the CAPRAA (Def. Br. at 8)—the court explained that where (as here) an employment contract is signed at the time of a business acquisition, the question for a court under North Carolina law is (i) whether there was "a termination of existing employment" and commencement of a new employment relationship, or (ii) if not, whether "some new material consideration is provided." 2015 WL 6093207, at *5. These questions are fact specific: *Amerigas* addressed them on a motion for summary judgment after discovery. *Id.* at *1. *See also Stevenson v. Parsons*, 96 N.C. App. 93, 97-98 (1989) (denying former employee's motion for summary judgment because there was "a genuine issue . . . as to whether the covenant not to compete between the parties was supported by valuable consideration.").[5] The only question before this Court, then, is whether Plaintiffs have adequately ***alleged*** the CAPRAA was supported by consideration. Plaintiffs have done so: they have alleged that there was either a new employment relationship when Collective Bias was acquired in December 2016 and Ms. Murphy signed the CAPRAA, or new material consideration in the form of "additional benefits." Compl. ¶¶ 37-38.

---

argument that a restrictive covenant fails merely because "it is a stand-alone document and not part of an employment agreement." *See Akzo Nobel Coatings Inc. v. Rogers*, No. 11 CVS 3013, 2011 WL 5316772, at *15 (N.C. Super. Ct. Nov. 3, 2011). Rather, it is enough that "the covenant [is] supported by independent consideration." *Id.*

[5] The other authority cited by the Defendants similarly addressed these questions on a factual record after the submission of evidence. *See Mastrom, Inc. v. Warren*, 18 N.C. App. 199, 202-03 (1973) (reviewing trial court's findings of fact and testimony of witnesses in analyzing whether the restrictive covenant was supported by consideration); *Cline v. Dahle*, 149 N.C. App. 975, 975 (2002) (affirming trial court ruling on summary judgment that the restrictive covenant failed for lack of consideration).

For example, in *Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2014 WL 5819826 (M.D.N.C. Nov. 10, 2014), the defendants argued that the plaintiff failed to sufficiently allege that restrictive covenants governed by North Carolina law were supported by consideration because the complaint alleged only that the restrictive covenants were "valid and enforceable." *Id.* at *3. The court disagreed. While the court acknowledged that such allegations did "seem conclusory," the allegations were nevertheless sufficient to state a claim because an agreement attached to the complaint included "a written promise to supply leads to [the defendants]" in exchange for the restrictive covenants, and although it was possible that "the lead program d[id] not operate as new or separate consideration," that issue could not be decided until after discovery and is "not appropriately addressed [at the pleading stage]."[6]   *Id.* at *4.  Like in *Superior Performers*, the agreement attached to the Complaint here includes a written promise provided in exchange for the restrictive covenants: "employment or engagement, or continued employment or engagement" and "compensation paid to you now and in the future."  Compl., Ex. B, at p.1.

In addition, under North Carolina law, the "new material consideration" that supports a restrictive covenant can take many forms: "continued employment for a stipulated amount of time; a raise, bonus, or other change in compensation; a promotion; additional training; uncertificated shares; or some other increase in responsibility or number of hours worked." *Hejl v. Hood, Hargett, & Assocs., Inc.*, 196 N.C. App. 299, 304 (2009) (citing cases).  Indeed, in *Stevenson v. Parsons*, the North Carolina Court of Appeals explained that the consideration can be "a pay raise or ***other employment benefits*** or advantages for the employee." 96 N.C. App. at 97 (emphasis

---

[6] In *Superior Performers*, the court addressed whether amendment would be futile, but "[w]hether [a court addresses] the issue under Rule 15(a) or Rule 12(b)(6), the applicable standard is identical." *Conley v. Nestle USA, Inc.*, No. 09-CV-5996, 2011 WL 332525, at *2 n.2 (N.D. Ill. Jan. 31, 2011).

added).  And that is precisely what Plaintiffs have alleged here: "additional benefits."  *See* Compl.

¶ 38.[7]

Third, Defendants are wrong that the CAPRAA is "facially unreasonable" and

"unenforceable" (Def. Br. at 8-11); like Defendants' arguments with regard to consideration, these

issues typically cannot be resolved on the face of the complaint,[8] and none of the cases they cite

suggests otherwise.[9]  Moreover, Defendants **admit** that evidence is needed to address the

---

[7] Defendants' arguments would fail under Illinois law as well.  Under Illinois law, when assessing whether a restrictive covenant is supported by consideration, courts apply a "fact-specific approach" and look to not only the length of post-covenant employment (which alone can be adequate consideration), but also to "other factors" including "compensation," and the circumstances of the employee's departure.  *R.J. O'Brien & Assocs., LLC v. Williamson*, No. 14 C 2715, 2016 WL 930628, at *3 (N.D. Ill. Mar. 10, 2016).  In addition, "Illinois courts have rejected the distinction between pre-and post-hire covenants when analyzing the adequacy of consideration."  *Stericycle, Inc. v. Simota*, No. 16 C 4782, 2017 WL 4742197, at *5 (N.D. Ill. Oct. 20, 2017).  Here, Inmar acquired Collective Bias in December 2016, and Ms. Murphy resigned on August 24, 2017, resulting in employment for approximately eight months.  *See* Compl. ¶¶ 37, 55 & Def. Br. at 9.  And, as the court in *R.J. O'Brien* acknowledged, there is a "big difference" between arguing that an employee "quit because the consideration failed," and that "the consideration failed because [the defendant] quit."  2016 WL 930628, at *3 (citation and internal quotation marks omitted).  Resolution of these issues must await discovery.  *See Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1109 (N.D. Ill. 2016) ("[T]he circumstances surrounding the signing of the Agreement ([defendant]'s promotion and increase in pay) and his apparently voluntary resignation are relevant to the analysis and weigh in favor of requiring a shorter length of post-covenant employment. But whether 15 months is adequate turns on disputed and yet-to-be-explored facts, and is therefore not appropriate for determination at this stage in the proceedings.").

[8] For example, in *ACS Partners, LLC v. Americon Group, Inc.*, No. 3:09cv464-RJC-DSC, 2010 WL 883663 (W.D.N.C. Mar. 5, 2010), the court denied the defendants' motion to dismiss a claim for breach of restrictive covenants, holding that "the enforceability of the Non-Compete Agreement must rest on factual questions" including the "scope of the restriction," "the nature of the business involved," "the nature of [the former employee's] duty" and "his knowledge of [his former employer's] business operation."  *Id.* at *7.  As the North Carolina Court of Appeals reiterated recently, "ruling on the enforceability of [a restrictive covenant] cannot be made at the pleadings stage in cases where evidence is needed to show the reasonableness of the restrictions contained therein."  *Market America, Inc. v. Lee*, 809 S.E.2d 32, 41 (N.C. Ct. App., 2017) (denying motion to dismiss).

[9] For example, Defendants cite to *CopyPro, Inc. v. Musgrove*, 232 N.C. App. 194 (2013) (Def. Br. at 7), but the court in *Copypro* was reviewing a trial court's issuance of preliminary injunction and analyzed the reasonableness of the restrictive covenants based on evidence submitted in support of the injunction.  *Id.* at 197 & 201-02. And in *Farr Associates, Inc. v. Baskin*, 138 N.C. App. 276 (2000) (Def. Br. at 10), the court affirmed the dismissal of a complaint after the trial court had denied a motion for a preliminary injunction; it did so based on evidence showing that a restrictive covenant applied for five years to activities in 461 offices across 41 states and 4 foreign countries.  *Id.* at 278 & 282.  The need for discovery in determining the reasonableness of a restriction is the same under Illinois law.  *See, e.g. Allied Waste*, 177 F. Supp. 3d at 1109-10 (denying motion to dismiss because "reasonableness of a restrictive covenant is determined based

7

enforceability of the restrictions: their only complaint is that the discovery would be extensive. *See* Def. Br. at 10 n.3. But that is not a basis for dismissal.

Fourth, Defendants are wrong that Plaintiffs fail to allege that Ms. Murphy breached the non-solicitation covenant or caused any damages. Def. Br. at 10. Defendants themselves admit that the Complaint alleges that Ms. Murphy contacted one of Plaintiffs' customers in violation of the non-solicitation provision (Def. Br. at 10)—their only argument is the unsupported assertion that this is not enough. Defendants also ignore the Complaint's allegations that "Plaintiffs suffered harm, including the loss of business" and that Ms. Murphy "agreed that any breach of the CAPRAA could not reasonably or adequately be compensated in damages in an action at law." Compl. ¶¶ 102, 107. These allegations are sufficient: "[O]nce solicitation of clients beg[ins], the harm is done." *IDS Fin. Svcs., Inc. v. Smithson*, 843 F. Supp. 415, 418 (N.D. Ill. 1994) (Norgle, J.) (granting preliminary injunction barring violation of non-solicitation).[10]

## III. Plaintiffs Adequately Plead that the Collective Bias Agreement is Enforceable.

First, Defendants argue that the Collective Bias Agreement is not enforceable because "the parties *intended* that the restrictive covenants in the Collective Bias Agreement be superseded by those in the CAPRAA." Def. Br. at 6 (emphasis added). Defendants point to the integration clause in the CAPRAA as evidence of the parties' intent. *Id.* But Defendants' argument ignores the fact

---

on the totality of the facts and circumstances of the individual case," which requires discovery) (citation and internal quotation marks omitted).

[10] The lone authority on which Defendants rely, *Stericycle, Inc. v. Carney*, No. 12 C 9130, 2013 WL 3671288 (N.D. Ill. July 12, 2013) (Def. Br. at 10-11), provides no support for their arguments. The court in *Stericycle* dismissed the claim for breach of the non-solicitation provision without prejudice because "complaint d[id] not say a word about any alleged breach of [defendant]'s non-solicitation obligations (even in conclusory terms)." *Id.* at *6. The plaintiff amended the complaint to cure the deficiency, the defendant again moved to dismiss, the plaintiff argued the allegations were sufficient for the same reasons argued here, and the court denied the defendant's motion. *See* Response in Opposition to Motion to Dismiss at pp. 1-2, *Stericycle, Inc. v. Carney*, No. 12 C 9130 (filed Oct. 3, 2013), ECF No. 70; Minute Entry, *Stericycle, Inc. v. Carney*, No. 12 C 9130 (filed Mar. 26, 2014), ECF No. 74 (denying motion to dismiss).

that the CAPRAA supersedes and merges "all prior discussions," not, for example, "all prior written or oral agreements," as is the case with the merger and integration clause in the Collective Bias Agreement. *Compare* Ex. A. to Compl. §11 *with* Ex. B. to Compl. §21.4.[11]

Defendants' argument also ignores the law in North Carolina that determining the intent of a merger and integration clause is a "fact-intensive inquir[y]" not appropriate for a motion to dismiss. *Wachovia Ins. Svcs., Inc. v. McGuirt*, No. 06 CVS 13593, 2006 WL 3720430, at *5 (N.C. Super. Ct. Dec. 19, 2006).[12] The question of intent also turns on whether "[t]he two contracts may be enforced consistently." *Whittaker*, 324 N.C. at 525 (holding that "[t]he jury could have found that it was not the intent of the parties to abrogate the first contract except to the extent set forth in the second"). Here, the scope of the restrictive covenants cannot be determined until after discovery. *See supra* pp. 7-8. Indeed, a ruling at this time with regard to the Collective Bias Agreement is particularly premature because "it could be argued that if the [CAPRAA] failed for want of consideration it would leave [Ms. Murphy] bound by the previous covenant that [s]he had signed." *Curtis 1000 v. Suess*, 24 F.3d 941, 946 (7th Cir. 1994).

<u>Second</u>, Defendants argue that the Collective Bias Agreement is not enforceable because it includes "an unenforceable *per se* restriction on Monica's right to earn a living in her chosen field." Def. Br. at 6. But Defendants do not argue that the other obligations in the contract are not enforceable, and misleadingly excerpt only a portion of the non-competition restriction, falsely claiming it is "without any qualification whatsoever," in order to make it appear broader than it is.

---

[11] This also distinguishes Defendants' invocation of *Avery Denison Corp v. Naimo*, No. 06 C 3390, 2006 WL 3343762, at *1 (N.D. Ill. Nov. 16, 2006) (Def. Br. at 6), where the integration clause applied to "all previous **agreements**." *Id.* (emphasis added).

[12] Defendants' citation to *Henley Paper Co. v. McAllister*, 253 N.C. 529 (1960) (Def. Br. at 6), undercuts their argument. In *Henley*, the issue was a factual issue resolved by a bench trial after the submission of "testimony and the record evidence." *Id.* at 534.

*See id.*[13]  In fact, the full provision (with the portion omitted by Defendants emphasized) states that Ms. Murphy will not "render services to any social media or shopper marketing company or agency in the United States that is a direct competitor ***to any account to which Employee was principally assigned at any point during the twelve (12) month period preceding his/her separation with the Company***."  Ex. A to Compl. § 5.a (emphasis added).  Ms. Murphy also agreed that she "would be able to earn a livelihood without violating the foregoing restrictions." *Id.* § 5.d.  Reading these provisions together, the non-competition restriction includes two clauses: the first "to" clause describes the entities for whom Ms. Murphy agreed not to provide certain services ("any social media or shopper marketing company or agency in the United States that is a direct competitor"), and the second "to" clause describes the certain services she agreed not to perform for those entities (services to "any account to which Employee was principally assigned at any point during the twelve (12) month period preceding his/her separation with the Company.").  This is not an unreasonable restriction.  At minimum, it cannot be resolved on a motion to dismiss.[14]

---

[13] Even adopting the reading Defendants suggest, courts have found that similar provisions are enforceable. *See Best Team Ever v. Prentice*, No. 319026, 2015 WL 3874477, at *4 (Mich. Ct. App. June 23, 2015) (upholding as reasonable a non-competition provision that restricted the former employee from engaging in "the business of restaurants, catering, and all related goods and services or other activities engaged in by Employer at the time Employee ceases to be employed") (internal quotation marks omitted).

[14] Applying Michigan law as required by the terms of the agreement, this Court could also modify the scope of the non-competition provision.  *See Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 679 (E.D. Mich. 2015). Defendants argue that Illinois courts "will not rewrite a *per se* unenforceable non-compete on public policy grounds" (Def. Br. at 6 n.1, citing *Medix Staffing Sols. v. Dumrauf*, No. 17 C 6648, 2018 WL 1859039, at *3 (N.D. Ill. Apr. 17, 2018)), but the law Defendants invoke does not support their argument.  Rather *Dumrauf* expressly acknowledged that Illinois courts ***will*** modify non-competes in certain circumstances (2018 WL 1859039, at *11-12).  In addition, the court in *Dumrauf* did not address the impact of a choice of law clause, but the Seventh Circuit has, and it has held that a district court applying the law of another state to a restrictive covenant under a choice of law clause can "exercise[] its equitable discretion under [that state's law] to blue pencil the restrictions." *Turnell*, 796 F.3d at 666.

IV.     **Plaintiffs Adequately Plead Claims Under the Illinois Trade Secret Act and the Defend Trade Secrets Act.**

To state a claim for misappropriation under ITSA, a plaintiff must show (i) "there was a trade secret," (ii) "the trade secret was misappropriated," and (iii) "the defendants used the trade secret in the course of business." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 304 F. Supp. 3d 746, 757 (N.D. Ill. 2018) (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003)). A claim under DTSA requires allegations that a trade secret related to a product or service used in, or intended for use in, interstate commerce, was misappropriated. 18 U.S.C. § 1836(b)(1).[15] "Courts in this district . . . have concluded trade secret allegations to be adequate in instances where the information and efforts to maintain its confidentiality are described in general terms." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2017) (internal quotation marks omitted). The "simple reason" for this rule is that requiring details "would result in public disclosure of the purported trade secrets." *Id.* at 921. Thus, "[c]ourts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." *Id.* (internal quotation marks omitted). This is not that case.

---

[15] Although Defendants mention it nowhere in their brief, so long as information has value and is subject to reasonable efforts to keep it secret, the statutory definitions for what qualifies as a "trade secret" are expansive and non-exclusive. Under ITSA, it is:

> information, ***including but not limited to***, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers . . . .

765 ILCS 1065/2(d) (emphasis added). Under DTSA, it is:

> ***all forms and types*** of financial, business, scientific, technical, economic, or engineering information, ***including*** patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, ***whether tangible or intangible, and whether or how stored***, compiled, or memorialized physically, electronically, graphically, photographically, or in writing . . . .

18 U.S.C. 1839(3) (emphasis added).

Plaintiffs have generally described the information and the efforts to maintain its confidentiality (*see* Compl. ¶¶ 13-28, 54-55, 77-80). This Court[16] and other courts in this District[17] have routinely found similar allegations to be sufficient. For example, in *Labor Ready*, the court denied the defendants' motion to dismiss where the plaintiff alleged that it undertook efforts to maintain the secrecy of information "through the restrictive covenants in the employment contracts, among other means," and the information included:

> Unique, confidential business practices, models and data; customer lists; the names of key individuals within the organization of customers and potential customers; customers' habits, preferences, special needs, and requirements; recruiting and training methods; site selection and compensation models; dispatch office layouts; pricing data; computer software and hardware; formats; manuals; methods and techniques of operation and training; personnel files; and marketing strategies.

149 F. Supp. 2d at 412 (alterations omitted). That is what Plaintiffs alleged here: (i) that they have undertaken efforts to maintain the secrecy of the information by "implementing policies[], . . . using passwords, keys, key cards, and security personnel; terminating access to confidential information at the conclusion of employment and requiring its return; and procuring nondisclosure,

---

[16] In *Fire 'Em Up, Inc. v. Technocarb Equipment. (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011) (Norgle, J.), this Court found that a plaintiff had adequately described the information constituting the trade secret with allegations similar to those here, but dismissed the plaintiff's complaint without prejudice because the lone allegation regarding efforts to maintain the secrecy of the information was a "reference[]" to a confidentiality agreement between the parties, and "such an agreement, without more, is not enough." *Id.* at 851. Here, there is more. *See* Compl. ¶ 80.

[17] *See, e.g.*, *FDIC v. Binetti*, No. 10 CV 5083, 2011 WL 249461, at *2 (N.D. Ill. Jan. 26, 2011) (denying motion to dismiss where plaintiff alleged (i) that "it expended extensive efforts to ensure that [its] information remained secret and confidential," implemented security "policies," and required that employees agree not to "retain, use, or disclose" the information; and (ii) that the information was "confidential customer and other information" contained in its "system"); *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 918 (N.D. Ill. 2012) (holding complaint making similar allegations adequately alleged trade secret misappropriation); *Troya Int'l, Ltd. Sti. v. Bird-X, Inc.*, No. 15 C 9785, 2017 WL 6059804, at *11-12 (N.D. Ill. Dec. 7, 2017).

non-solicitation, and noncompetition agreements;" (Compl. ¶ 80) and (ii) that the information includes:

> Customer information, including the identity of current, former, and prospective customers and the identity of and contact information for the decision-makers at the customers; Influencer information, including the identity of current, former, and prospective influencers, and the contact information for the influencers; Business intelligence and research regarding current, former, and prospective customers, including their marketing and sales strategies; and, Information regarding Collective Bias's product offerings (including the design and functionalities of its Shopper Social Media™ platform, Prescriptive IQ™ platform, and Social Fabric® community), positioning in the market, pricing, competitive differentiators, territory and account plans, lead sources, rate cards, budget templates, timeline standards, business opportunities, and research dossiers.

Compl. ¶ 78. *See also* ¶¶ 13-28, 54-55. Defendants nevertheless argue that the Complaint should be dismissed.

First, Defendants ask the Court to narrow the allegations at issue using a straw man: they argue that the Court should ignore over a dozen paragraphs in the Complaint because the only "relevant" allegations are included in two paragraphs (Paragraphs 54-55) detailing "documents" Ms. Murphy forwarded from her work email account to her personal email account. Def. Br. at 12-13. But the Complaint provides no basis for inferring that these are the only documents Ms. Murphy stole: the Complaint expressly alleges that her "actions included (but were not limited to)" stealing the information in the emails she forwarded to herself. Compl. ¶ 54. And in any event, "trade secrets" under ITSA and DTSA are not limited to "documents." Trade secrets are "information," whether "tangible or intangible," however stored or memorialized (*see* 765 ILCS 1065/2(d) & 18 U.S.C. 1839(3)), and the misappropriation "does not have to be a physical taking by actually copying the [information]." *Stampede Tool Warehouse, Inc. v. May*, 272 Ill. App. 3d 580, 590 (1st Dist. 1995). As the Illinois Supreme Court has explained, it "make[s] no difference whether the information contained in [documents], if it qualifie[s] as a trade secret . . . has been

13

pilfered by [copying] the [documents] themselves . . . or has been memorized by someone with a photographic memory, or has been committed to memory by constant exposure to the [documents] while in the employ of plaintiffs." *Schulenburg v. Signatrol, Inc.*, 33 Ill. 2d 379, 387 (1965). Here, Plaintiffs allege that Ms. Murphy pilfered both the information in the emails she forwarded to herself, and also the information described in Paragraphs 13-28 and 77-80 that she learned based on close to two years of constant exposure to it while employed by Plaintiffs. *See* Compl. ¶¶ 29, 33-35, 55.[18]

Second, Defendants attack the first straw man with a second straw man: Focused on the two paragraphs they dub "relevant," Defendants disingenuously "distill[]" the 473 words describing the trade secrets in Paragraphs 54 and 55 down to three categories—(i) "contact information;" (ii) "research;" and (iii) "summaries" of "discussions," "plans," and "talking points." Def. Br. at 13. Defendants then mischaracterize these categories as "Plaintiffs'" "categories" and claim the Court can determine that these categories are not trade secrets as a matter of law. *Id.* But this argument ignores the Seventh Circuit's direction in *Learning Curve Toys* that "the question of whether certain information constitutes a trade secret ordinarily is best resolved by a fact finder after full presentation of evidence from each side." 342 F.3d at 723 (citation and internal quotation marks omitted). This is because defining a trade secret is "one of the most

---

[18] The decision of the court in *Garon Foods v. Montieth*, No. 13-cv-214-JPG-PMF, 2013 WL 3338292 (S.D. Ill. July 2, 2013) is instructive. In *Garon*, the defendant resigned from her sales position with the plaintiff and started working for a competitor, whereupon the plaintiff brought suit against the former employee for violations of the ITSA, seeking an injunction. *Id.* In granting the injunction, the court held that it was likely that the plaintiff could show that the defendant (i) "used confidential information about [the defendant's] customers' past product purchases" to market to potential customers on behalf of her new employer; (ii) that "[t]he customer's needs and purchasing history, as well as the terms of [the defendant's] sales to that customer, that [the plaintiff] *retained in her memory*" qualified as trade secrets; and (iii) that the plaintiff "misappropriated those trade secrets by disclosing or using them in her solicitations." *Id.* at *5, *6 (emphasis added); *id.* at *7 ("In light of her close attention to these . . . customers and her inevitable memory of their past purchasing needs and sales terms – [the plaintiff's] confidential information and trade secrets – [the defendant] is unlikely to be able to refrain from using this information for the benefit of [her new employer].").

elusive and difficult concepts in the law to define" and therefore "ordinarily is a question of fact" that "requires an ad hoc evaluation of all the surrounding circumstances." *Id*. (citation and internal quotation marks omitted). Defendants do not even acknowledge the Seventh Circuit's guidance on this issue, or acknowledge the difference between pleading and proving the existence of a trade secret. Rather, they attempt to muddy the waters as much as possible: they invoke state court decisions that either applied a different pleading standard[19] or weighed the evidence at a later stage of litigation;[20] or federal cases that denied a similar motion,[21] weighed the evidence at a later stage of litigation,[22] decided a different issue,[23] or themselves confused the difference between pleading versus proving a claim.[24]

---

[19] *Alpha School Bus Co., Inc. v. Wagner*, 391 Ill. App. 3d 722 (1st Dist. 2009) (*see* Def. Br. at 13) addresses the fact pleading standard in state court, which for the reasons explained below, is irrelevant. *See infra* note 25.

[20] *System Development Service, Inc. v. Haarmann*, 389 Ill. App. 3d 561 (5th Dist. 2009) and *Pope v. Alberto-Culver Co.*, 296 Ill. App. 3d 512 (1st Dist. 1998) (*see* Def. Br. at 13) both address the sufficiency of the *evidence* after a bench trial and summary judgment, respectively.

[21] In *Fleetwood Packaging v. Hein*, No. 14 C 09670, 2015 WL 6164957 (N.D. Ill. Oct. 20, 2015), the court *denied* the defendants' motion to dismiss with regard to the trade secrets.

[22] In *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632, 2015 WL 94235 (N.D. Ill. Jan 5. 2015) (Def. Br. at 12), the court was addressing whether the quantum of evidence assembled by the plaintiff after discovery was sufficiently specific to defeat a motion for *summary judgment*. 2015 WL94235 at *1. Indeed, in *GlobalTap*, the defendants had previously moved to dismiss the plaintiff's ITSA claim, making the same arguments and citing the same cases as the Defendants here, and the court rejected them. *Compare* Elkay Manufacturing Company's Motion to Dismiss Counts II, V, and VI of the Amended Complaint, pp. 3-5, *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632 (filed March 22, 2013), ECF No. 22 *with* Minute Entry, *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632 (filed June 27, 2013), ECF No. 36 ("Motion to dismiss 22 is . . . denied without prejudice with respect to the trade secret misappropriation claim (Count II).")

[23] Defendants cite *Allied Benefit Systems, Inc. v. Ramirez*, 188 F. Supp. 3d 704 (N.D. Ill. 2015) for the proposition that the court "dismiss[ed] the complaint" because "the plaintiff could not identify any confidential information that the defendant actually disclosed or used." Def. Br. at 12. But the Court in *Allied Benefit* was not applying the pleading standards of Rule 8(a), but rather addressing a challenge to the court's subject matter jurisdiction, which required the plaintiff to "*prove* those jurisdictional facts by a preponderance of the evidence." 188 F. Supp. 3d at 705 (emphasis added) (citation and internal quotation marks omitted).

[24] Both *Carpenter v. Aspen Search Advisers, LLC*, 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) and *Thermal Zone Products Corp. v. Echo Engineering, Ltd.*, No. 93 C 0556, 1993 WL 358148, at *5 (N.D. Ill. Sept. 4, 1993) (*see* Def. Br. at 14) mistakenly invoked the Seventh Circuit's decision in *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1266 (7th Cir. 1992) for the proposition

Third, while Defendants admit that "Plaintiffs generally allege that they have safeguarding policies" to keep their information secret, Defendants nevertheless argue that these allegations are insufficient because Plaintiffs have failed to plead with particularity "who or how many people" had access to the information, "when these documents were created," where the information was stored ("a safeguarded network or internally available to all employees"), and "how Plaintiffs safeguarded the specific information." Def. Br. at 14-15. But these specifics are what Rule 9(b) requires for claims sounding in fraud—the "who, what, when, where, and how: the first paragraph of any newspaper story" (*Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (citation and internal quotation marks omitted))—not what Rule 8(a) requires for a claim under ITSA or DTSA.[25]

Fourth, Defendants claim that "Plaintiffs have not pled that Defendants actually used Plaintiff's trade secrets in their business" but rather, according to Defendants, "merely speculate as to use" and "never allege that they lost any customer account or business at all." Def. Br. at 15. That is false: Plaintiffs allege in the Complaint that "Defendants have obtained economic benefit

---

that trade secrets must be pleaded with a high degree of specificity. *Composite*, however, predates the Seventh Circuit's decision in *Learning Curve Toys* and, as this Court has explained, it addressed the level of specificity "required to support a ***finding*** of misappropriation," not the level of specificity required to withstand a motion to dismiss. *Fire 'Em Up, Inc.*, 799 F. Supp. 2d at 850 (distinguishing *Composite*). Consequently, courts have criticized *Carpenter* and *Thermal Zone* as wrongly decided. *See, e.g.*, *Interactive Sols. Grp., Inc. v. Autozone Parts, Inc.*, No. 11-13182, 2012 WL 1288173, at *3 (E.D. Mich. Apr. 16, 2012) ("[*Carpenter* and *Thermal Zone*] relied on *Composite Marine Propellers, Inc.* for the proposition that a plaintiff must specify its alleged trade secrets with specificity but, as stated above, that case looked at the specificity that must be established at trial - not at the pleading stage.")

[25] The only authority Defendants cite in support of their argument that Plaintiffs fail to meet the pleading standard is *Alpha School Bus*, 391 Ill. App. 3d 722. Def. Br. at 15. But state court authority on pleading standards is irrelevant: "Unlike the fact-pleading approach of Illinois courts, the Federal Rules do not require plaintiffs to plead the elements of legal theories along with facts matching each element." *United States ex rel. Iowa Based Milling, Ltd. Liab. Co. v. Fischer Excavating, Inc.*, No. 4:12-cv-4082-SLD-JAG, 2014 WL 4638600, at *6 (C.D. Ill. Sep. 17, 2014). Indeed, the Seventh Circuit has reversed district courts when it appears they have done so: in *Christensen v. County of Boone*, 483 F.3d 454 (7th Cir. 2007), the Seventh Circuit reversed the district court's dismissal of an Illinois state law claim because, in holding that plaintiff had not specifically alleged certain facts, "the district court appear[ed] to have applied Illinois' fact-pleading requirements for civil complaints." *Id.* at 465; *id.* at 466 ("Although the district court was correct in observing that the complaint did not contain all of the facts that would be necessary to prevail, a filing under Rule 8 is not supposed to do that." (citation and internal quotation marks omitted)).

from the theft of these trade secrets, including winning new customers based on the unauthorized disclosure and use of the information." Compl. ¶ 81. While Defendants argue that these allegations are insufficient, Defendants' own authority undercuts this argument. In *Woodard v. Harrison*, No. 08-2167, 2008 WL 4724370 (C.D. Ill. Oct. 24, 2008), the court dismissed the plaintiff's ITSA claim without prejudice for the narrow reason that the plaintiff alleged that the defendant "'***intends*** to use [the trade secrets] to develop business,'" rather than the defendant "has in fact ***used***" the trade secret. *Id.* at *3 (emphasis added). The plaintiff solved this shortcoming by filing an amended complaint that removed the word "intends," and the defendants answered.[26] Defendants' other authority fares no better.[27]

In any event, misappropriation can be presumed here under the doctrine of inevitable disclosure.[28] Here, Plaintiffs allege that Defendant Ahalogy is a direct competitor of Plaintiffs, offers the same services as Plaintiffs, and expressly compares itself to Plaintiffs (Compl. ¶¶ 40-46); that Ms. Murphy was hired to perform the exact same job at Defendant Ahalogy that she performed at Plaintiffs (*id.* ¶¶ 50-51); and that Ms. Murphy had access to Plaintiffs' trade secrets and confidential information. *Id.* ¶¶ 34-35.

---

[26] *Compare* Notice of Removal and Exhibit A, Complaint, p. 6 ¶ 23, *Woodard v. Harrison*, No. 08-2167 (C.D. Ill. filed July 23, 2008), ECF No. 1 *with* Amended Complaint, ¶ 18, *Woodard v. Harrison*, No. 08-2167 (C.D. Ill. filed Nov. 7, 2008), ECF No. 19; Answer to Amended Complaint, *Woodard v. Harrison*, No. 08-2167 (C.D. Ill. filed Nov. 20, 2008), ECF No. 24.

[27] Defendants also cite to *Alpha School Bus*, 391 Ill. App. 3d 722, *Allied Benefit Systems*, 188 F. Supp. 3d 704 (N.D. Ill. 2015) and *Abbott Laboratories v. Chiron Corp.*, No. 97 C 0519, 1997 WL 208369 (N.D. Ill. Apr. 23, 1997). *Alpha School Bus* and *Allied Benefit* are inapposite for the reasons identified above, and *Abbott Laboratories* is inapposite because the court's statements with regard to the ITSA claim are dicta: the court held that Massachusetts and California law applied to the plaintiff's claims, and dismissed the complaint without prejudice because the plaintiff's complaint was "based only on Illinois law and [was] therefore fatally defective." 1997 WL 208369, at *3.

[28] "The inevitable disclosure doctrine allows courts to infer a defendant's use of trade secrets based on a defendant's prior position with plaintiff, the information to which they had access, and the nature of their work for their new employer." *Covenant Aviation Security, LLC v. Berry*, 15 F. Supp. 3d 813, 819 (N.D. Ill. 2014) (citation and internal quotation marks omitted); *see also RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 875-76 (N.D. Ill. 2001).

## V.      Plaintiffs Adequately Plead a Violation of the Computer Fraud and Abuse Act.

To state a claim under Section 1030(g) for a violation of Section 1030(a)(2)(C), a plaintiff must allege that a defendant (i) "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access;" (ii) "thereby obtain[ed] . . . information from any protected computer;" and (iii), the conduct involves one of several additional factors, including "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(a)(2)(C), (c)(4)(A)(i), (g).  "Loss" is defined by the statute as "any reasonable cost to any victim, including (among other things) "the cost of responding to an offense" and the cost of "conducting a damage assessment.  *Id.* at § 1030(e)(11).  Plaintiffs did so in their Complaint: they allege that although Ms. Murphy's access privileges were limited to using Plaintiffs' interstate computer system for the benefit of Plaintiffs, she exceeded that authorized access to obtain information for her own personal benefit and that of Ahalogy, and that Plaintiffs will incur losses of at least $5,000 during a one-year period.  *See* Compl. ¶¶ 108-116.

Defendants nevertheless argue that Plaintiffs fail to state claims under the CFAA because (i) Plaintiffs' CFAA claims under 18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(b) supposedly require allegations of both "damage" (defined in Section 1030(e)(8) as "any impairment to the integrity or availability of data, a program, a system, or information") *and* "loss," and (ii) Plaintiffs have supposedly in any event failed to adequately allege a loss in excess of $5,000.  Def. Br. at 16-18.  Defendants are wrong on both points.

First, Defendants rely on outdated law: they cite to three district court decisions, including this Court's decision in *TriTeq Lock and Security LLC v. Innovative Secured Solutions, LLC,* No. 10 CV 1304, 2012 WL 394229 (N.D. Ill. Feb. 1, 2012), for the proposition that a "loss" can only be adequately alleged if it also includes damage.  Def. Br. at 16-17.  Specifically, they cite to this Court's reasoning that "loss" under the CFAA refers to either "the cost of investigating or repairing

18

a computer or computer system *following a violation that caused damage* to a computer or computer system," or "revenue lost, cost incurred, or other consequential damages incurred *because of an interruption in service*." 2012 WL 394229, at *7 (emphasis added); *see* Def. Br. at 17. These decisions, however, are no longer good law because they all predate the Seventh Circuit's recent decision in *Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075 (7th Cir. 2016), in which the Seventh Circuit stated plainly that "§ 1030(g) provides a civil remedy for any person who suffers damage *or* loss due to a violation of § 1030." *Id.* at 1079 (emphasis added).[29] "The word 'or' means what it says." *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760, 766 (N.D. Ill. 2009) (rejecting Defendants' same argument).[30]

---

[29] In *Fidlar*, the plaintiff alleged that the defendant had accessed its computer systems without authorization, and argued that doing so violated 18 U.S.C. § 1030(a)(5)(A), which punishes anyone who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes *damage* without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A) (emphasis added). The plaintiff did *not* allege a violation of Section 1030(a)(2)(C). In affirming the district court's decision that the plaintiff had failed to satisfy the requirements of Section 1030(a)(5)(A), the Seventh Circuit noted that "by using the word 'damage' [in this subsection], Congress intended this provision reach actual disruptions in service, not mere access, even if trespassory." *Fidlar* 810 F.3d at 1085. Because the defendant in *Fidlar* had not "actually impaired the availability and integrity of a protected computer," "[i]n reality, [the plaintiff's] claim [wa]s trespassory in nature," and the plaintiff's conduct was not a violation of Section 1030(a)(5). *Id.* The Seventh Circuit contrasted that with Section 1030(a)(2), which addresses claims that *are* trespassory in nature by "prohibiting unauthorized access to obtain information from a protected computer *without requiring damage.*" *Id.* (first emphasis added, second emphasis in original); *Motorola*, 609 F. Supp. 2d at 767 (rejecting the same argument Defendants make here because "every court of appeals to address the point" has rejected the argument reasoning it would "render portions of the CFAA meaningless and would lead to an absurd result," namely, "the CFAA would provide a cause of action for any violation of the statute, but only if the defendant also violates section 1030(a)(5)(A)").

[30] Defendants' authority is distinguishable for other reasons, too. For example, *Instant Technology, LLC v. Defazio*, 40 F. Supp. 3d 989 (N.D. Ill.2014) made findings of fact and conclusions of law after a bench trial, and while the plaintiff (unlike here) did not allege a "loss," the court found that the costs the plaintiff incurred "might be compensable," but failed to present sufficient evidence at trial. *Id.* at 1019-20. Likewise, *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands International, Inc.*, 616 F. Supp. 2d 805 (N.D. Ill. 2009) was decided at summary judgment, and the court specifically noted the significance of this fact, stating "[t]his is not a motion to dismiss. Therefore, the Court cannot blindly accept the allegation that [the plaintiff] conducted a 'damage assessment' as true." *Id.* at 812.

Second, Defendants are incorrect that Plaintiffs' allegations of loss under Section 1030(c)(4)(A)(i)(I) are insufficient. Def. Br. at 18. To allege a claim under Section 1030(g), a plaintiff must allege a "loss to 1 or more persons during any 1 year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I) & (g). That is precisely what Plaintiffs have alleged: that they suffered a loss, which "includes the costs of responding to the Defendants' unlawful actions and conducting a damage assessment, which is ongoing and will exceed $5,000 well before the expiration of a one-year period." Compl. ¶ 114. Those allegations are entirely sufficient at the pleading stage. *See Modrowski v. Pigatto*, 712 F.3d 1166 (7th Cir. 2013).[31]

Defendants urge this Court to impose a summary judgment standard here on a motion to dismiss and require the Plaintiffs to have proved their allegations in their Complaint. But that is not the law, nor does the lone authority Defendants cite stand for such a proposition.[32]

## VI. Plaintiffs' Claims are Not Preempted by ITSA.

Defendants argue that Plaintiffs' claims for tortious interference with contract, conversion, trespass to chattels, unjust enrichment, and civil conspiracy are preempted by ITSA. Def. Br. at 18. But Defendants overstate the breadth of the law: ITSA only displaces common law claims

---

[31] In *Modrowski*, the plaintiff brought a claim under the CFAA, asserting that the plaintiff "suffered in excess of $5,000.00 in damages," attributable to (among other things) the costs plaintiff incurred to "hire individuals to investigate" defendants' actions. First Amended Complaint ¶ 71, *Modrowski v. Pigatto*, No. 09cv7002 (N.D. Ill., July 9, 2010), ECF No. 27. In response, the defendants did not move to dismiss, but rather moved for summary judgment on the grounds that the plaintiff had not and could not offer any evidence supporting the assertion of a loss during a one year period of at least $5,000. Order at 2, *Modrowski v. Pigatto*, No. 09cv7002 (N.D. Ill., Jan. 11, 2011), ECF No. 49. The district court granted the motion when Plaintiff failed to offer any evidence in response, and the Seventh Circuit affirmed for that same reason, noting that at the summary judgment stage, in order to prevail, the plaintiff "was obliged to point to evidence that, if believed by the trier of fact, would be sufficient to show that his loss did in fact exceed $5,000." *Modrowski*, 712 F.3d at 1168, 1170.

[32] *Tamlyn v. Bluestone Advisors, LLC*, No. 17 C 8893, 2018 WL 1920184 (N.D. Ill. Apr. 24, 2018) stands for the proposition that where (unlike here) a complaint makes *no* allegations regarding the $5,000 threshold and asserts only that the plaintiff "has suffered damages," the complaint fails to allege a violation of 18 U.S.C. § 1030(a) and should be dismissed without prejudice. *See* Exhibit 1 to Notice of Removal: Complaint ¶ 44, *Tamlyn v. Bluestone Advisors, LLC*, No. 17 C 8893 (N.D. Ill. Dec. 11, 2017), ECF No. 1.

"when they rest on the conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005).[33] As the Seventh Circuit explained in *Hecny*, "it is unimaginable that someone who steals property [and] business opportunities . . . would get a free pass just because none of what he filched is a trade secret." *Id.* at 404. "An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would sound even if the customer list were a public record." *Id.* at 405. Thus, the rule is that claims are only preempted if "the claims are dependent on the existence of confidential information." *Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 920 (N.D. Ill. 2014) (applying *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014)). Here, Plaintiffs' claims would sound even if the information were not confidential because Ms. Murphy and Ahalogy were stealing customers and business opportunities. *See, e.g.*, Compl. ¶ 57.

## VII. Plaintiffs Adequately Plead Tortious Interference with Contract.

To state a claim for tortious interference with contract, a plaintiff must allege "(1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages." *Maximum Indep. Brokerage, LLC v. Smith*, 218 F. Supp. 3d 630, 640 (N.D. Ill. 2016) quoting *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005). Plaintiffs did so in their Complaint: they allege that "valid contracts existed" with Ms. Murphy (the Collective Bias Agreement and the CAPRAA); that Ahalogy "was aware of these contracts;" that Ahalogy hired Ms. Murphy "with the knowledge and

---

[33] *See also Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691 (N.D. Ill. 2017) (finding no preemption under ITSA of common law claims for promissory estoppel, tortious interference with contract and prospective business advantage, conversion, and unjust enrichment). Furthermore, although Defendants argue that the unjust enrichment claim fails because the parties' relationships are governed by contract (Def. Br. at 20) , that argument applies only to Ms. Murphy, and fails because at the pleading stage, a party may "allege . . . unjust enrichment claims in the alternative to its breach of contract claims." *Mission Measurement*, 216 F. Supp. 3d at 922.

21

intent" that she breach those contracts; and that "Murphy did breach those contracts, damaging Plaintiffs in an amount to be determined at trial." Compl. ¶¶ 118-120. Indeed, Plaintiffs specifically allege that Ahalogy used a recruiter to target and hire Ms. Murphy away from Collective Bias to perform at Ahalogy the same job that she performed at Collective Bias in violation of Ms. Murphy's obligations under the Employment Agreement and CAPRAA. *Id.* ¶¶ 48-52. Defendants argue that the foregoing allegations are insufficient, but the cases they cite are inapposite.[34]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety, but if any portion is granted, it should be granted without prejudice with leave to amend the Complaint.

---

[34] Both *Echo, Inc. v. Timberland Machines & Irrigation, Inc.,* 661 F.3d 959, 968 (7th Cir. 2011) and *Chocolate Industries, Inc. v. Cornerstone Promotion, Inc.*, No. 11 C 4649, 2012 WL 3598754 (N.D. Ill. Aug. 20, 2012) address the quantum of evidence that must be produced at summary judgment (not the adequacy of allegations on a motion to dismiss), and *Pampered Chef v. Alexian*, 804 F. Supp. 2d 765 (N.D. Ill. 2011) made its findings on a motion for preliminary injunction based on two days of testimony and over 11,000 pages of exhibits and deposition transcripts. In addition, the language from *Pampered Chef* cited by Defendants that "[l]awful competition does not constitute unjustifiable interference" (Def. Br. at 19) was made regarding a claim for tortious interference with *prospective business advantage* (not with contract) in the context of the plaintiff admitting that "without a valid non-solicitation clause there would have been no 'unjustified tampering' and thus no viable claim for tortious interference with economic advantage." 804 F. Supp. 2d at 808 (internal citations omitted). Here, of course, the claim is that there *is* a valid non-solicitation clause. The *Pampered Chef* decision also applied the "competitor's privilege" which operates as a defense to claims for tortious interference with prospective economic advantage. However, the competitor's privilege is an affirmative defense and a plaintiff need not anticipate or overcome the defense in its complaint. *Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 868 (N.D. Ill. 2015); *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 973 (N.D. Ill. 2007). Furthermore, Illinois courts have explicitly stated that the competitor's privilege will operate as a defense to tortious interference with business expectancy claims *but not tortious interference with contract claims*. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12-cv-01851, 2014 WL 1099039, at *5 (N.D. Ill. Mar. 20, 2014).

Dated: July 13, 2018                    Respectfully Submitted,

                                        /s/ Justin O. Kay

                                        Andrew C. Porter (ARDC No. 6209750)
                                        andrew.porter@dbr.com
                                        Justin O. Kay (ARDC No. 6286557)
                                        justin.kay@dbr.com
                                        Matthew M. Morrissey (ARDC No. 6302575)
                                        matthew.morrissey@dbr.com
                                        **DRINKER BIDDLE & REATH LLP**
                                        191 North Wacker Drive, Suite 3700
                                        Chicago, IL 60606-1698
                                        Tel:    (312) 569-1000
                                        Fax:    (312) 569-3000

                                        *Counsel for Plaintiffs Inmar, Inc. and
                                        Collective Bias, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 13, 2018, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

By:/s/Justin O. Kay_____